**EXEL CORPORATION, Appellee,**

v.

**UNITED STATES of America, Appellant.**

**No. 71-1063.**

United States Court of Appeals, Eighth Circuit.

Nov. 9, 1971.

Janet R. Spragens, Atty., Tax Div., Dept. of Justice, Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Harry Baum, Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellant; Evan L. Hultman, U. S. Atty., of counsel.

Michael O. McDermott, Thomas M. Collins, Cedar Rapids, Iowa, for appellee.

Before VAN OOSTERHOUT, MEHAFFY and ROSS, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is a timely appeal by the United States from final judgment awarding Exel Corporation $13,302.69 for refund of income tax erroneously assessed and paid for the fiscal years ending July 31, 1961, 1962, 1963 and 1964. The proper foundation for the suit was laid; jurisdiction is established.

The critical issue presented by the appeal is whether a loss carryover claimed by the taxpayer Exel Corporation for the years 1961 through 1964 is made unavailable under the facts in this case by § 382(a), I.R.C.1954 (26 U.S.C.A. § 382(a)).[1]

The trial court held that § 382(a) did not make the loss carryover impermissible. We reverse.

The basic facts are stipulated. Taxpayer, an Iowa corporation under the corporate name of Eclipse Lumber Company, operated a chain of retail lumber yards from 1902 until April 1959. On May 1, 1959, pursuant to a contract entered into on February 2, 1959, Eclipse sold and delivered all of its assets (excluding any refund due on federal income taxes) to H. B. Pearl, Inc., for $2,275,000.00, and since that date has not engaged in the retail lumber business. The sale produced an admitted net operating loss of $1,089,357.82, part of which was carried back to the taxable years ending July 31, 1956, 1957 and 1958. After such application, $331,653.-60 of the loss remained to carry forward. For 1960, $72,040.44 of the loss carry forward was utilized to offset income in that amount thus eliminating a tax of $31,961.03. The balance of the loss carry forward in the sum of $259,-613.16 remained. The use of the loss carry back and carry forward for all periods through the fiscal year ending July 31, 1960, is not challenged.

Immediately after the sale of its lumber yard assets taxpayer changed its name to Exel Corporation. The proceeds of the sale were invested in short-term Government securities which matured during the summer of 1960. Its tax returns for the relevant taxable years reflect the following investments:

|  | Cash and Receivables | Government Securities | Common Stock |
|---|---|---|---|
| July 31, 1959 | $ 149,157.03 | $2,126,161.36 | $ —0— |
| July 31, 1960 | 2,566,714.91 | —0— | —0— |
| July 31, 1961 | 59,721.59 | 222,930.31 | 553,525.63 |
| July 31, 1962 | 67,174.70 | 170,296.79 | 601,731.93 |
| July 31, 1963 | 28,410.57 | 130,213.38 | 675,882.22 |
| July 31, 1964 | 24,811.36 | 60,000.00 | 760,547.67 |

The only income against which the net operating loss is claimed arises out of income generated by the investment of the proceeds of the sale. During the interval between the sale of the assets and the change of ownership the income consisted, largely if not exclusively, of interest on short-term Government securities.

Taxpayer prior to the sale of its lumber assets and prior to the redemption of more than 50% of its stock was prin-

1. Citations here unless otherwise indicated are to I.R.C.1954.

cipally owned by three families, Dalsemer-Dulaney, Ward-Staley and Lingo. Each family group owned approximately 30% of the stock, the remaining 10% being owned by minority interests. The shares of the minority interests were redeemed approximately one year after the sale of the assets. The shares of the Ward-Staley group and the Lingo group were redeemed in October 1960. Thereafter the Dalsemer-Dulaney group owned 100% of the outstanding Exel stock.

The parties agree that the amount of the refund is properly computed if taxpayer has established its right to use the losses to offset income during the years here in controversy.

The trial court made the following conclusions of law:

"1. This court has jurisdiction of the parties and the subject matter. 28 U.S.C. § 1346(a) (1).

"2. Plaintiff may offset 1961–1964 fiscal year gains from its investment business with the loss carry forward from the sale of its lumber business since plaintiff continued to carry on a trade or business substantially the same as that conducted before any change in the percentage ownership of the fair market value of its outstanding stock. 26 U.S.C. § 382(1).

"3. Treasury Regulations on Income Tax (1954 Code), § 1.382(a)–1 et seq. are not binding here since they were not in effect at the time of either the change in business or the change in ownership. Commissioner [of Internal Revenue] v. Goodwyn Crockery Co., 315 F.2d 110, 113 (6th Cir. 1963).

"4. 26 U.S.C. § 382 was enacted to provide an *objective* standard to automatically deny the loss carryover deduction if there was a substantial change in business *after* the requisite change in ownership. H. F. Ramsey Co., 43 T.C. 500, 514 (1965)."

The judgment in favor of the taxpayer allowing the loss carry forward with

respect to the years here involved is based upon such conclusions.

It is the Government's position that § 382(a) with respect to the tax years here involved bars the use of the net operating loss carryover that would otherwise be available to taxpayer under § 172. Section 382(a) sets forth two tests, both of which must be satisfied to bar the use of the otherwise permissible loss carryover, to wit, (1) a 50% change in ownership of the corporation, (2) a change in the trade or business of the corporation following the change in ownership.

The parties agree that a 50% change in ownership as contemplated by § 382(a) took place as a result of the October 1960 stock redemptions. Thus the controversy centers on whether there has been a change in the trade or business of the corporation subsequent to the change in ownership. The portion of § 382(a) here pertinent reads:

"Sec. 382. (a) Purchase of a corporation and change in its trade or business.—

(1) In general.—If, at the end of a taxable year of a corporation—

\* \* \* \* \* \*

(C) such corporation has not continued to carry on a trade or business *substantially the same as that conducted before any change in the percentage ownership* of the fair market value of such stock,

the net operating loss carryovers, if any, from prior taxable years of such corporation to such taxable year and subsequent taxable years shall not be included in the net operating loss deduction for such taxable year and subsequent taxable years." (Emphasis added).

■ The Government contends that the emphasized portion of the statute should be interpreted to mean substantially the same business which produced the loss. We do not believe the interpretation urged by the Government can reasonably be inferred from the words used in the statute. The statute in plain and

unambiguous language requires that the corporation continue a trade or business substantially the same as that conducted before the change in ownership. There is no language in the statute that either expressly states or fairly implies that the business that produced the loss must be continued to entitle taxpayer to use the loss carryover. Under the provisions of the 1939 Code as interpreted in Libson Shops, Inc. v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924, the loss offset carryover was allowable only if the income against which the offset is claimed was produced by substantially the same business which produced the loss. The legislative history of the 1954 Act is set out and discussed in detail in Maxwell Hardware Co. v. C. I. R., 9 Cir., 343 F.2d 713. The court in the course of its decision holds:

"By enacting the 1954 Code, Congress destroyed the precedential value of the rule of decision of Libson Shops; that is, that for a loss carryover deduction to be allowed, the income against which the offset was claimed must have been produced by substantially the same businesses which incurred the losses. This is not now the law. * * *

* * * * * *

"[I]t was the clearly expressed intention of Congress to attempt to bring some order out of chaos, and, in effect, to countenance 'trafficking' in operating loss carryovers except as affected by the special limitations of Section 382 and the general limitations of Section 381. * * *" 343 F.2d 713, 716, 718.

See Frederick Steel Co. v. C. I. R., 6 Cir., 375 F.2d 351, 353.

We agree with the holding of the case cited that Congress by the provisions of the I.R.C. of 1954 intended to and did change the existing law as set forth in Libson Shops.

The vital issue here confronting us is whether Exel has continued to carry on a trade or business substantially the same as that conducted before the change of ownership. Taxpayer urges that after the sale of the lumber assets in 1959 it entered into an investment business, that it continued such business for one and one-half years prior to the change of ownership in October 1960, that the investment business was its trade or business at the time of the change in ownership and continued to be its business after the change of ownership.

The Government disagrees, stating that the only trade or business Exel ever engaged in is the lumber business which it admittedly abandoned and that Exel's subsequent investment activities do not constitute a trade or business. In support of its position, the Government relies on Treasury Regulations on Income Tax, 1954 Code (26 C.F.R.) § 1.382(a)–1 (h) (4) which reads:

"For purposes of this paragraph, the holding, purchase, or sale for investment purposes of stock, securities, or similar property shall not be considered a trade or business unless such activities historically have constituted the primary activities of the corporation."

Taxpayer in its brief states:

"The real issue in this case involves solely Treasury Regulation, § 1.382(a)–1(h) (4). If this Regulation is (1) valid, and (2) can be given retroactive effect (even though it was not promulgated until more than three and one-half years after the original sales contract was entered into in the instant case), then the taxpayer herein cannot prevail. It is the position of the taxpayer that neither of the above conditions can be met."

■ The trial court in its findings points out that the Treasury Regulation relied upon was not promulgated until October 30, 1962, and then holds at conclusion of law No. 3 supra that the regulation cannot be retroactively applied. From all that appears in the trial court's findings and conclusions, it declined to apply the regulation solely upon the ground that it could not be applied retroactively. Such determination is clear-

ly based on an erroneous view of the law. The Secretary or his delegate is given authority to adopt rules and regulations by § 7805, including the right to determine when the rule will be applied without retroactive effect. The Secretary has power to apply regulations retroactively. Dixon v. United States, 381 U.S. 68, 74, 85 S.Ct. 1301, 14 L.Ed.2d 223; Automobile Club of Michigan v. Commissioner of Internal Revenue, 353 U.S. 180, 183–184, 77 S.Ct. 707, 1 L.Ed. 2d 746; Pollack v. C. I. R., 5 Cir., 392 F.2d 409, 411; United States v. Fenix and Scisson, Inc., 10 Cir., 360 F.2d 260, 267.

In Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831, the Court holds:

"This Court has many times declared that Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons. See, *e. g.*, Fawcus Machine Co. v. United States, 282 U.S. 375, 378, [51 S.Ct. 144, 75 L.Ed. 397.]"

■ The trial court did not pass upon the validity of the regulation. We find nothing in the regulation inconsistent with the statute. The regulation is a reasonable interpretation of the statute when viewed in the light of the statute itself and its legislative history.

In Higgins v. Commissioner of Internal Revenue, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783, the issue presented was whether expenses incurred by taxpayer incident to looking after investments were deductible expenses incurred in carrying on a trade or business. The Supreme Court, in affirming the holding that the expenses so incurred were not deductible, states:

"To determine whether the activities of a taxpayer are 'carrying on a business' requires an examination of the facts in each case. As the Circuit Court of Appeals observed, all expenses of every business transaction are not deductible. Only those are deductible which relate to carrying on a business. The Bureau of Internal Revenue has this duty of determining what is carrying on a business, subject to re-examination of the facts by the Board of Tax Appeals and ultimately to review on the law by the courts on which jurisdiction is conferred. The Commissioner and the Board appraised the evidence here as insufficient to establish petitioner's activities as those of carrying on a business. The petitioner merely kept records and collected interest and dividends from his securities, through managerial attention for his investments. * * *" 312 U.S. 212, 217–218, 61 S.Ct. 475, 478, 85 L.Ed. 783.

See Deputy v. Du Pont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416, particularly concurring opinion of Justice Frankfurter at p. 499, 60 S.Ct. 363.

■ The trial court at conclusion No. 2, supra, at least by implication, determined that the investment business conducted by taxpayer subsequent to the sale of the lumber assets is a trade or business and that the investment business was continued after the change of ownership. No fact findings are made to support such determination and as heretofore pointed out, the court gave no consideration to the regulation relied upon by the Government. We have carefully examined the record and find no substantial evidence to support a finding that the taxpayer's asserted investment activities constitutes a trade or business. All taxpayer did was to use the lumber sale proceeds to provide short-term Government securities. The tax return for the fiscal year ending July 31, 1960, shows that at the end of such year all securities had been converted into cash. Directors' minutes in the record show no corporate action taken to enter into the investment business. There was some discussion among the stockholders as to

the use to be made of the corporate funds but there is no evidence that any agreement was reached prior to the time of the 1960 stock redemption.

█ Taxpayer has failed as a matter of law to establish that its purchase of short-term Government securities in the interval between the sale of the lumber assets and the redemption of the stock constitutes a trade or business. Sale of lumber, not investments, was taxpayer's historical activity and such business had been discontinued prior to the stock redemption. See United States v. Fenix and Scisson, Inc., supra; Euclid-Tennessee, Inc. v. Commissioner of Internal Revenue, 6 Cir., 352 F.2d 991.

In *Fenix and Scisson,* the Court found support for a loss carry forward in Treasury Regulation § 1382(1) (h) (6) [2]. The court holds that the taxpayer's activities after abandoning its trade and preserving and liquidating its assets does not constitute a trade or business; a jury finding to the contrary was reversed.

It is obvious that taxpayer could not continue a trade or business after the redemption which did not exist at the time of the change in ownership.

██ Taxpayer's contention that it will receive no tax benefit as a result of the change of ownership because less than its proportionate share of the loss existing at the time of the change of ownership is required to offset the income here involved lacks merit. Special benefits to taxpayers do not turn upon general equitable consideration but are matters of legislative grace. The taxpayer has the burden of showing he comes within a statutory provision allowing the deduction claimed. United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 235–236, 75 S.Ct. 733, 99 L.Ed. 1024; Deputy v. Du Pont, supra; Mercantile Bank & Trust Co. v. United States, 8 Cir., 441 F.2d 364, 366.

Section 382(a) (1) (B) (ii) specifically contemplates a change in ownership by redemption as well as by purchase.

We hold that § 382(a) (1) (C) forecloses taxpayer's right to carry forward the tax loss it here claims.

The judgment appealed from is reversed and the case is remanded with direction to enter judgment consistent herewith.

---

2. (6) A corporation has not continued to carry on a trade or business substantially the same as that conducted before any increase in the ownership of its stock if the corporation is not carrying on an active trade or business at the time of such increase in ownership.