**WISCONSIN NIPPLE AND FABRICAT-
ING CORPORATION,
Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.**

No. 77–1792.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 12, 1978.
Decided July 26, 1978.

Victor M. Harding, Milwaukee, Wis., for petitioner-appellant.

Richard Farber, Atty., Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before PELL and TONE, Circuit Judges, and GRANT, Senior District Judge.*

TONE, Circuit Judge.

The issue before us is whether the Commissioner of Internal Revenue abused his discretion in retroactively applying his determination that the taxpayer's profit-sharing plan was not entitled to qualified status under 26 U.S.C. §§ 401(a)(3)(B) and 501(a). The Tax Court sustained the Commissioner, *Wisconsin Nipple and Fabricating Corp. v. Commissioner of Internal Revenue*, 67 T.C. 490 (1976), and we affirm.

In 1960 the taxpayer, Wisconsin Nipple and Fabricating Corporation, sought and obtained from the IRS District Director in Milwaukee a determination letter to the effect that a profit-sharing plan the company proposed to institute for certain of its employees met the requirements of §§ 401(a)(3)(B) and 501(a) of the Code. The plan covered only full-time, salaried employees with at least one year's employment with the company, the hourly-wage employees having indicated to the company that they preferred to receive the cash bonuses the company had been paying instead of participating in the plan.[1] Four employees, who were the company's four highest paid employees and two of whom were officers,

---

\* The Honorable Robert A. Grant, Senior District Judge of the United States District Court for the Northern District of Indiana, is sitting by designation.

1. Cash bonuses continued to be paid to certain salaried persons as well, however.

met the plan's criteria. The non-salaried employees ineligible to participate were fifteen in number. The plan was instituted in 1960 following receipt of the IRS determination letter.[2]

In 1962, after amending the forfeiture provisions of the plan,[3] the taxpayer sought and obtained a second IRS determination letter stating that the plan continued to be qualified. None of the eligibility provisions were changed by the amendment. In 1962 the same four employees remained eligible for benefits under the plan, to the exclusion of fifteen non-salaried employees. The lowest-paid participant, however, by then earned less than one of the non-salaried employees.[4]

During an audit in the summer of 1973 of the taxpayer's returns for the taxable years ending April 30, 1972 and 1973, the Internal Revenue Service informed the taxpayer that the qualification of the profit-sharing plan was being reexamined by IRS. This led the company to amend the plan on December 28, 1973, retroactively to May 1, 1973,[5] to include all full-time employees with one year's experience, including those paid on an hourly basis.

During the taxable years 1971 and 1972, six employees met the plan's eligibility criteria: the four who were originally eligible, the chairman of the board of directors,[6] and a foreman, who had been continuously employed by the company since the plan's inception but was not a salaried employee until after the 1962 taxable year. During the 1971 and 1972 taxable years, sixteen employees were ineligible to participate in the plan solely because they failed to satisfy the salaried-only criterion.[7]

On March 27, 1974, IRS informed the taxpayer that it was revoking, retroactively effective to May 1, 1971, its prior determination that the plan, as it stood before the

2. During the 1960 taxable year, the positions and compensations of the participants in the plan and the compensation of the excluded full-time hourly employees were as follows:

| Participants | | Excluded Employees |
|---|---|---|
| Chief Executive | $11,448.76 | $5,823.58 |
| Vice President Sales | 11,310.00 | 5,387.40 |
| Purchasing Agent and Production | 6,807.82 | 5,162.36 |
| | | 4,593.59 |
| Bookkeeper | 5,995.76 | 4,468.10 |
| | | 4,249.96 |
| | | 4,066.49 |
| | | 4,024.50 |
| | | 3,902.45 |
| | | 3,834.92 |
| | | 3,820.52 |
| | | 3,595.25 |
| | | 3,581.15 |
| | | 3,393.23 |
| | | 3,338.17 |

3. The record indicates that the principal motivation behind the taxpayer's decision to amend the plan in 1962 was intervening revenue rulings which, but for the amendment, might have disqualified the plan.

4. During the 1962 taxable year, the positions and compensations of the participants in the plan and the compensation of the excluded, hourly employees were as follows:

| Participants | | Excluded Employees |
|---|---|---|
| Chief Executive | $15,476.04 | $6,409.30 |
| Vice President Sales | 14,641.00 | 5,604.04 |
| Purchasing Agent and Production | 7,210.93 | 5,537.67 |
| | | 5,215.78 |
| Bookkeeper | 6,383.30 | 5,186.94 |
| | | 4,766.52 |
| | | 4,552.54 |

| Participants | Excluded Employees |
|---|---|
| | 4,253.38 |
| | 4,152.74 |
| | 4,025.17 |
| | 3,957.67 |
| | 3,903.34 |
| | 3,815.37 |
| | 3,306.40 |
| | 3,169.56 |

5. *See* 26 U.S.C. § 401(b).

6. Who was also apparently a salaried employee, as he had to be in order to be eligible under the terms of the plan. Also, unless he was an employee he could not have been included in any plan because of the requirement of § 401(a) that the plan be for the exclusive benefit of employees. *See* 4A *Merten's Law of Federal Income Taxation* § 25B.09 at 40 (1972).

7. In the taxable year ending April 30, 1972, the positions and compensations of the participants in the plan and the compensation of the excluded full-time hourly employees were as follows:

| Participants | | Excluded Employees |
|---|---|---|
| Chief Executive | $24,477.09 | $8,501.88 |
| Vice-President Sales | 21,404.75 | 8,009.38 |
| Purchasing Agent and Production | 11,159 70 | 7,933.56 |
| | | 7,596.91 |
| Bookkeeper | 10,328.24 | 7,169.69 |
| Foreman | 9,807 32 | 6,825 47 |
| Board Chairman | 5,100.00 | 6,610.48 |
| | | 5,416.33 |
| | | 5,406.19 |
| | | 5,298.74 |
| | | 5,277.57 |
| | | 4,802.91 |
| | | 4,745.74 |
| | | 4,589.49 |
| | | 4,531.61 |

1973 amendment, was qualified. The reason given for the retroactive revocation was that the plan discriminated in favor of the officers, shareholders, supervisors, and highly-paid employees contrary to § 401(a)(3)(B).[8]

The taxpayer filed an action in the Tax Court to set aside the asserted deficiencies. The Tax Court sustained the disallowance of deductions under § 404(a)(3)(B), while allowing a deduction under § 404(a)(5), which applies to nonqualified plans, for most of the amount in issue for the second of the two taxable years. The resulting deficiencies amount to about $6,000 for the year ending April 30, 1971 and $500 for the second taxable year.[9]

## I.

The taxpayer does not question the correctness of the Commissioner's determination that the plan as it existed in the 1971 and 1972 taxable years did not meet the requirements of § 401(a)(3)(B), a determination which, in view of the statutory phrase "found by the Commissioner," should "be given a shade more than its usual substantial weight," *Commissioner v. Pepsi-Cola Niagara Bottling Co.*, 399 F.2d 390, 393–394 (2d Cir. 1968). Moreover, it is conceded that the Commissioner could properly have determined in either 1960 or 1962 that the plan was not qualified, which is consistent with the taxpayer's position that no material changes occurred between 1962 and the end of the 1972 taxable year. In short, the taxpayer's argument is that the Commissioner changed his legal position when, in 1974, he revoked the earlier approval, and that he could do so only prospectively.

The Commissioner's argument is that the taxpayer could not reasonably rely upon the 1960 and 1962 determination letters in the light of a later revenue ruling published before the 1971 taxable year, Rev.Rul. 69–

398, 1969–2 Cum.Bull. 58, and that in any event there was a material change in the facts, as a result of which the taxpayer could not reasonably rely on the earlier approvals.

## II.

■ Section 7805(b) of the Internal Revenue Code, 26 U.S.C. § 7805(b), provides as follows:

> The Secretary or his delegate may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect.

The explanation for the presumption in favor of retroactivity implied by this statutory language lies in the declaratory theory of jurisprudence on which the statute is predicated. The predecessor of § 7805(b), enacted in 1921,[10] was in response to a proposal the Secretary of the Treasury had made in 1919. The provision was sought because administrative rulings were viewed as merely declaring what the statute had meant all along, and therefore necessarily retroactive, and it was thought the Secretary or his delegate should have power to grant relief from retroactivity in appropriate cases. *See Comment*, "Limits on Retroactive Decision Making by the Internal Revenue Service: Redefining Abuse of Discretion under Section 7805(b)," 23 U.C.L.A. L.Rev. 529, 532 (1976). Thus the Supreme Court has said that the provision "confirmed" the Commissioner's authority to make a ruling or regulation retroactive and "empowered him, in his discretion, to limit retroactive application to the extent necessary to avoid inequitable results." *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, 184, 77 S.Ct. 707, 710, 1 L.Ed.2d 746 (1957). The 1921 provision, after an amendment in 1928 to permit the Commis-

---

**8.** The taxpayer has never met either of the percentage-of-employees-covered tests of § 401(a)(3)(A), which would have automatically entitled the taxpayer to qualification of the plan, assuming other § 401 criteria were satisfied.

**9.** The effect was to shift most of the tax liability for the second year from the taxpayer to the beneficiaries under the plan.

**10.** Revenue Act of 1921, ch. 136 § 1314, 42 Stat. 227.

sion to relieve against retroactivity even when the different interpretation resulted from a court decision,[11] has since been repeatedly reenacted without substantial change and survives today in § 7805(b). *See Comment, supra,* 23 U.C.L.A. L.Rev. at 532 n. 21; *cf. Dixon v. United States,* 381 U.S. 68, 71 n. 3, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965).

The Supreme Court has held that the Commissioner has broad discretion to determine whether a ruling changing a prior ruling is to be applied retroactively. *Automobile Club of Michigan v. Commissioner, supra,* 353 U.S. at 184, 77 S.Ct. 707; *Dixon v. United States, supra,* 381 U.S. at 80, 85 S.Ct. 1301. Both of these cases dealt with retroactivity of changes in the Commissioner's interpretation of a statute, which the Court viewed as correcting earlier "mistakes of law." In *Automobile Club* the only test articulated by the Court in stating its conclusion that the Commissioner had not abused his discretion in making his ruling retroactive was whether he had "dealt with petitioner upon the same basis as other automobile clubs." 353 U.S. at 186, 77 S.Ct. at 711.[12]

In *Dixon,* after describing *Automobile Club* as holding "that the Commissioner is empowered retroactively to correct mistakes of law in the application of the tax laws to particular transactions," 381 U.S. at 72, 85 S.Ct. at 1304, the Court added that "[h]e may do so even where a taxpayer may have relied to his detriment on the Commissioner's mistake," *id.* at 73, 85 S.Ct. at 1304, citing *Manhattan General Equipment Co. v. Commissioner,* 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528 (1936). The Court went on to say,

> This principle is no more than a reflection of the fact that Congress, not the Commissioner, prescribes the tax laws. The Commissioner's rulings have only such force as Congress chooses to give them, and Congress has not given them the force of law. Consequently it would ap-

pear that the Commissioner's acquiescence in an erroneous decision, published as a ruling, cannot in and of itself bar the United States from collecting a tax otherwise lawfully due.

*Dixon v. United States, supra,* 381 U.S. at 73, 85 S.Ct. at 1304. The absence of notice before the taxable event that the Commissioner had changed his position was insufficient to establish abuse of discretion, because the taxpayer was not justified in assuming the Commissioner would not make such a change. In so holding, the Court relied upon the declaratory principle of jurisprudence indorsed in *Manhattan General Equipment,* which sustained retroactive application of a change in a regulation, and quoted from that decision the following passage:

> The statute defines the rights of the taxpayer and fixes a standard by which such rights are to be measured. The regulation constitutes only a step in the administrative process. It does not, and could not, alter the statute. It is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand.

*Manhattan General Equipment,* 297 U.S. at 135, 56 S.Ct. at 400, quoted in *Dixon,* 381 U.S. at 74–75, 85 S.Ct. 1301. The Court said in *Dixon* that "[t]his reasoning applies with even greater force to the Commissioner's rulings and acquiescences," and therefore, even if the acquiescence involved in that case would have relieved the taxpayer from tax liability if it had not been withdrawn, the Commissioner was not precluded "from collecting the tax lawfully due under the statute." 381 U.S. at 75, 85 S.Ct. at 1305 (footnote omitted).

Although the Court in *Dixon* proceeded to indicate its disagreement with the taxpayer's view that the acquiescence in question would have resulted in non-taxability, it did so in ruling on the taxpayer's disparate treatment argument; and the holding

---

**11.** Revenue Act of 1928, ch. 852 § 605, 45 Stat. 791.

**12.** There is neither a contention nor evidence in the record that Wisconsin Nipple has been treated in a discriminatory manner.

summarized above was plainly the basis on which the Court disposed of the detrimental reliance argument and was, at the very least, an alternative ground of decision.

Apart, therefore, from limitations the Commissioner may have voluntarily imposed on his own authority to determine the effective date of a change in the law, see part III, *infra*, neither a taxpayer's reliance to his detriment nor his good faith require the Commissioner to exercise his discretion to make a ruling prospective only.[13] The jurisprudential concept enunciated in *Manhattan General Equipment* and given in *Dixon* as the reason that an IRS acquiescence in a Tax Court decision could not justifiably be relied on by a taxpayer and could be retroactively withdrawn, compels the conclusion that a taxpayer is not justified in relying on an interpretative ruling of the Commissioner, and makes detrimental reliance unavailable to a taxpayer as a ground for avoiding retroactivity unless the Commissioner chooses to make it so.

## III.

There remain the questions of whether the Commissioner has limited his own power to determine the retroactive effect of rulings, and if so, whether any limitation he has adopted entitles the taxpayer to relief. The Commissioner's argument in this court is based on the assumption that he has limited his authority by the issuance of revenue procedures stating the standards by which the continuing effect of a determination letter will be judged. Those standards are in substance as follows:

1. If a published revenue ruling is issued which is applicable to a previously approved plan, the plan, in order to retain its qualified status, must be amended to conform with that ruling during the taxable year following the one in which the ruling was issued. P.S. 35, 1944 STD. FED. TAX SERV. (CCH) ¶ 6647, superseded January 3, 1972 by Rev.Proc. 72–6, 1972–1 Cum. Bull. 710. Thus with respect to the approved plan the revenue ruling is not given retroactive effect[14] and becomes effective only at the beginning of the next taxable year.

2. If no applicable published ruling affecting the qualification of the plan has intervened between the approval and the revocation of the approval, the revocation will not have retroactive effect in the absence of certain specified circumstances. Rev.Proc. 72–3, 1972–1 Cum.Bull. 698. Because we conclude that there was an intervening revenue ruling making P.S. 35 and Rev.Proc. 72–6 applicable, it is unnecessary to consider Rev.Proc. 72–3.[15]

---

**13.** The taxpayer relies upon decisions of courts of appeals antedating *Dixon* for the propositions that taxpayer bad faith is essential before retroactivity may be ordered, *Lesavoy Foundation v. Commissioner*, 238 F.2d 589, 591–592 (3d Cir. 1956), and that a Commissioner is bound by a plan approval issued by his predecessor and cannot withdraw the approval absent a material change of fact, *H.S.D. Co. v. Kavanagh*, 191 F.2d 831, 846 (6th Cir. 1951); *Time Oil Co. v. Commissioner*, 258 F.2d 237, 238 (9th Cir. 1958). To the extent that these decisions so indicate, they are inconsistent with *Dixon* and *Automobile Club*.

**14.** Retroactivity would exist if the ruling were applied to disqualify a plan for a taxable year prior to the year in which the ruling was issued. Thus P.S. 35 stated:
> Rulings promulgated subsequent to the issuance of approval letters are not applied retroactively in cases where there have been no material misstatements of fact.

Both P.S. 35 and Rev.Proc. 72–6 avoid any problem of retroactivity with respect to the portion of the taxable year antedating the ruling by making the ruling inapplicable until the following taxable year.

**15.** Rev.Proc. 72–3, § 13.05 (which superseded Rev.Proc. 69–1, § 13.05, 1969–1 Cum.Bull. 381, 386, without change of substance) provides in pertinent part:
> Except in rare or unusual circumstances, the revocation or modification of a ruling will not be applied retroactively with respect to the taxpayer to whom the ruling was originally issued . . . if (1) there has been no misstatement or omission of material facts, (2) the facts subsequently developed are not materially different from the facts on which the ruling was based, (3) there has been no change in the applicable law, (4) the ruling was originally issued with respect to a prospective or proposed transaction, and (5) the taxpayer directly involved in the ruling

The Commissioner argues that an applicable revenue ruling was issued prior to the beginning of the taxpayer's taxable year ending April 30, 1971, and that the taxpayer was therefore required to amend its plan during that taxable year to comply with the ruling. The ruling relied upon is Rev.Rul. 69–398, 1969–2 Cum.Bull. 58. Based on Judge Friendly's decision in *Commissioner v. Pepsi-Cola Niagara Bottling Corp.*, 399 F.2d 390 (2d Cir. 1968), the ruling describes a profit-sharing plan for the benefit of full-time salaried employees strikingly similar to the one in the case at bar.[16] Citing the *Pepsi-Cola Niagara Bottling* case, the ruling held that because "all participants except the one who is the lowest paid are highly compensated in this particular company and therefore members of the group in whose favor discrimination is prohibited," it followed "that the coverage classification . . does not meet the requirements of § 401(a)(3)(B) of the Code since it results in discrimination in favor of employees who are officers, shareholders, supervisors, or highly compensated."

The arguments of the taxpayer in the case at bar that Rev.Rul. 69–398 is distinguishable do not merit discussion in this opinion.[17] It is sufficient to say that it seems to us that if the plan described in the ruling did not meet the requirements of § 401(a)(3)(B), a *fortiori* the same is true of the plan of the taxpayer here. Compare note 7 with note 16.

Thus, the taxpayer was required under P.S. 35 to conform its plan to the requirements of the ruling in the taxable year ending April 30, 1971, and the same requirement was imposed by Rev.Proc. 72–6 for the taxable year ending April 30, 1972. Having failed to meet this requirement, the determination letters the taxpayer had received in 1960 and 1962 were no longer effective. Because the taxpayer had failed to take advantage of the grace period the Commissioner had allowed in P.S. 35 and Rev.Proc. 72–6 for compliance with the revenue ruling, the Commissioner's self-imposed limitations no longer impaired his power to determine the effective date of the revocation.

In the view we take of the case it is unnecessary to determine whether, as the Tax Court found and the Commissioner argues before us, the fifty percent increase in employee coverage, with the increase exclusively to members of the suspect class, constituted a material change of facts between the dates of the issuance of the determination letters and the taxable years in question. Such a determination, and hence the applicability of Rev.Proc. 72–3, § 13.05(2), would be necessary only if we had found that Rev.Rul. 69–398 was inapplicable.

acted in good faith in reliance upon the ruling and the retroactive revocation would be to his detriment.

If there were no intervening applicable revenue ruling, and thus Rev.Proc. 72–3 were applicable, only the existence of condition (2) would be in issue. The Commissioner does not contend that material facts have been misstated or omitted. The only claimed change in the applicable law is the issuance of a revenue ruling in 1969, which would make P.S. 35 and Rev.Proc. 72–6 applicable rather than Rev.Proc. 72–3 and its predecessor. Condition (4) was met in the case at bar, and there seems to be no question that condition (5) is satisfied.

16. The plan provided that all such employees with three years of service were eligible to participate in the plan. Only six of the employer's 14 full-time employees with three full years of service were eligible to participate in the plan, because the other eight were paid on an hourly basis. The six participating employees were the president and sole stockholder, the vice-president and supervisor of sales personnel, a foreman, two salesmen, and a bookkeeper. The compensation of the full-time employees was as follows:

| Salaried (Participants) | Hourly-Paid (Excluded) |
| --- | --- |
| $30,000 | $7,000 |
| $12,000 | $7,000 |
| $10,000 | $6,000 |
| $ 9,000 | $6,000 |
| $ 8,500 | $5,500 |
| $ 6,500 | $5,500 |
|  | $5,500 |
|  | $4,500 |

17. Particularly, we point out, because at least since the *Pepsi-Cola* case and the revenue ruling based thereon, it has been clear that "highly compensated" employees is a relative, not an absolute, concept.

Apart from the doctrinal underpinnings of the Commissioner's broad power to determine retroactivity and his compliance with his own self-imposed limitations on that power, we are not convinced that the taxpayer has been unfairly treated in this case. Nothing requires the Commissioner to issue an opinion with respect to the qualification of a taxpayer's profit-sharing plan. It is not unreasonable for him to charge a taxpayer receiving the benefit of such an opinion with the responsibility of keeping abreast of current developments in the law to be assured that his plan is still in compliance. Moreover, a taxpayer may avoid any uncertainty about whether his plan is qualified by bringing it within the "safe-harbor" provisions of § 401(a)(3)(A), which unequivocally qualify plans meeting certain percentage requirements. Accordingly, even if we had considerably more supervisory authority over the Commissioner's exercise of discretion than we do, we would not find that discretion to have been abused.

AFFIRMED.