**H. Douglas WILSON, and Roberta D. Wilson, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 77–3101.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 6, 1978.

Decided Dec. 20, 1978.

Gregory S. Shumaker, Eastman, Stichter, Smith & Bergman, Toledo, Ohio, for plaintiffs-appellants.

William D. Beyer, U. S. Atty., Cleveland, Ohio, Scott P. Crampton, Asst. Atty. Gen., Myron C. Baum, Gilbert E. Andrews, Gary R. Allen, Marilyn E. Brookens, Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellee.

Before WEICK and CELEBREZZE, Circuit Judges, and PECK, Senior Circuit Judge.

CELEBREZZE, Circuit Judge.

The sole issue presented for review is whether the taxpayer-lessors are entitled to a loss deduction under Internal Revenue Code § 165 [1] by virtue of the demolition of a building by the lessee pursuant to permission granted in the lease. We hold that they are not entitled to such deduction and affirm the judgment of the district court.

The facts were stipulated by the parties in the district court. In 1958 taxpayers inherited a parcel of land in Toledo, Ohio, upon which was situated a building.[2] Taxpayers calculated allowable depreciation by the straight line method assuming a useful life of twenty years. In 1970 taxpayers leased the real estate to a bank. The lease was for a twenty-five year term and provided that:

> The tenant shall have the right to raze the building now situated upon the demised premises at its sole cost and expense and shall have no duty to restore the same at the end of the term hereof.

The rent was to remain unchanged if the building were demolished. In 1971 the lessee razed the building in order to use the site as a parking lot. In their 1971 tax return taxpayers took a loss deduction equal in amount to the adjusted basis of the razed building. The Commissioner of Internal Revenue disallowed this deduction, saying that the adjusted basis of the building should be amortized over the term of the lease.

Taxpayers paid the assessed deficiency and brought this action for a refund in the district court. The district court agreed with the Commissioner's position and entered judgment for the United States. The critical issue on appeal concerns the interpretation of the former version of Treasury Regulation § 1.165–3(b)(2) and the effect of the amended version of § 1.165–3(b)(2) promulgated after the entry of the district court's judgment.

The regulation, as in effect during the pendency of the case below, prohibited a loss deduction "if a lessor or lessee of real property demolishes the buildings situated

---

1. Internal Revenue Code § 165:

    **(a) General rule.**—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

2. The building was inherited by plaintiff H. Douglas Wilson. His wife, Roberta D. Wilson, is a party by virtue of being co-lessor of the realty and filing a joint tax return with her husband.

thereon *pursuant to the requirements of a lease.*"[3] (Emphasis added). Instead, it allowed the adjusted basis of the buildings to be amortized over the lease term. If the phrase "pursuant to the requirements of a lease" is interpreted to include a lease provision which permits but does not expressly mandate demolition of the buildings, the district court must be affirmed on that basis.[4]

As amended, effective December 21, 1976, § 1.165–3(b)(2) prohibits a loss deduction "if a lessor or lessee of real property demolishes the buildings situated thereon pursuant to a lease . . . under which either the lessor was required or *the lessee was required or permitted to demolish such buildings.*"[5] (Emphasis added). The amended regulation still allows the adjusted basis of the buildings to be amortized over the lease term. The amended regulation clearly decides the issue in this case contrary to taxpayers, so if it is applied retroactively the district court must be affirmed on that basis.[6]

We hold both that the demolition involved in this case was "pursuant to the requirements of a lease" and that the amended version of § 1.165–3(b)(2) should be applied retroactively.[7]

Since the regulation has been amended to cover explicitly the instant factual pattern, our discussion of the old version of § 1.165–3(b)(2) need not be lengthy. Suffice it to say that we agree with the holdings of the seventh and eighth circuits that rejected a narrow reading of the word "requirements." *Landerman v. Commissioner,* 454 F.2d 338 (7th Cir. 1971), *cert. den.* 406 U.S. 967, 92 S.Ct. 2411, 32 L.Ed.2d 666 (1972); *Foltz v. United States,* 458 F.2d

---

**3.** Treas.Reg. § 1.165–3(b) (before December 21, 1976 amendment):

> **Intent to demolish formed subsequent to the time of acquisition.** (1) Except as provided in subparagraph (2) of this paragraph, the loss incurred in a trade or business or in a transaction entered into for profit and arising from a demolition of old buildings shall be allowed as a deduction under section 165(a) if the demolition occurs as a result of a plan formed subsequent to the acquisition of the buildings demolished. The amount of the loss shall be the adjusted basis of the buildings demolished increased by the net cost of demolition or decreased by the net proceeds from demolition. See paragraph (c) of § 1.165–1 relating to amount deductible under section 165. The basis of any building acquired in replacement of the old buildings shall not include any part of the basis of the property demolished.
>
> (2) If a lessor or lessee of real property demolishes the buildings situated thereon pursuant to the requirements of a lease or the requirements of an agreement which resulted in a lease, no deduction shall be allowed to the lessor under section 165(a) on account of the demolition of the old buildings. However, the adjusted basis of the demolished buildings, increased by the net cost of demolition or decreased by the net proceeds from demolition, shall be considered as a part of the cost of the lease to be amortized over the term thereof.

**4.** This issue has been noted, but not decided, twice by this circuit. *Yates Motor Co. v. Commissioner,* 561 F.2d 15, 18 (6th Cir. 1977); *Barry v. United States,* 501 F.2d 578, 584 n. 8 (6th

Cir. 1974), *cert. den.* 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975).

> *See also Bender v. United States,* 383 F.2d 656 (6th Cir.), *cert. den.* 390 U.S. 958, 88 S.Ct. 1049, 19 L.Ed.2d 1152 (1967), upholding the validity of § 1.165–3(a).

**5.** Treas.Reg. § 1.165–3(b)(2) (effective December 21, 1976):

> If a lessor or lessee of real property demolishes the buildings situated thereon pursuant to a lease or an agreement which resulted in a lease, under which either the lessor was required or the lessee was required or permitted to demolish such buildings, no deduction shall be allowed to the lessor under section 165(a) on account of the demolition of the old buildings. However, the adjusted basis of the demolished buildings, increased by the net cost of demolition or decreased by the net proceeds from demolition, shall be considered as a part of the cost of the lease to be amortized over the remaining term thereof.

The amended regulation took effect approximately seven weeks after entry of judgment below and approximately one week before taxpayers' notice of appeal was filed. Subsection (b)(1) remained unchanged. 41 Fed.Reg. 55710 (December 22, 1976).

**6.** This issue was noted but not decided by this court in *Yates Motor Co., supra,* 561 F.2d at 18 n. 2.

**7.** We do not address the rationale relied upon by the district court to deny the deduction, *viz.,* that there was no "loss . . . not compensated for by insurance or otherwise," as required by § 165(a).

600 (8th Cir. 1972). *See also Levinson v. Commissioner,* 59 T.C. 676 (1973). *Contra, Hightower v. United States,* 463 F.2d 182 (5th Cir. 1972); *Feldman v. Wood,* 335 F.2d 264 (9th Cir. 1964). The word "requirement" means something wanted or needed,[8] so demolition "pursuant to the requirements of a lease" must include within its ambit demolition that is permitted, while not expressly mandated, in a lease. This interpretation is particularly appropriate in light of the rules of construction that "exemptions from taxation are to be construed narrowly," *Bingler v. Johnson,* 394 U.S. 741, 752, 89 S.Ct. 1439, 1445, 22 L.Ed.2d 695 (1969), and the "taxpayer has the burden to show that it is within the provision allowing the deduction," *United States v. Olympic Radio & Television, Inc.,* 349 U.S. 232, 235, 75 S.Ct. 733, 736, 99 L.Ed. 1024 (1955); *Commissioner v. National Alfalfa Dehydrating & Milling Co.,* 417 U.S. 134, 149, 94 S.Ct. 2129, 40 L.Ed.2d 717 (1974); *New Co-lonial Ice Co. v. Helvering,* 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348 (1934).[9]

As noted, the amended version of § 1.165–3(b)(2) expressly denies a loss deduction on facts like the instant case. The retroactive application of the amended regulation also works to bar the deduction here.

■ Internal Revenue Code § 7805(b),[10] in giving the Commissioner power to "prescribe the extent, if any, to which any . . . regulation . . . shall be applied without retroactive effect," establishes a presumption that regulations are to be applied retroactively. *Dixon v. United States,* 381 U.S. 68, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965); *Automobile Club of Michigan v. Commissioner,* 353 U.S. 180, 183–88, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957); *Southern Hardwood Traffic Ass'n v. United States,* 411 F.2d 563, 564 (6th Cir. 1969).[11] *See also*

---

8. Webster's Third New International Dictionary (Unabridged). *See Landerman, supra,* 454 F.2d at 340.

9. This interpretation is also consistent with the longstanding treatment of this factual pattern by the Commissioner both before the adoption of the original version of § 1.165–3(b)(2) in 1960 and afterward. *Landerman, supra,* 454 F.2d at 340 & n. 3. The original version of § 1.165–3(b)(2) was not intended to change the settled law on this issue. Rev.Rul. 67–410, 1967–2 C.B. 93.

10. Internal Revenue Code § 7805(b):

**Retroactivity of Regulations or Rulings.** —The Secretary or his delegate may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect.

11. *See also Fruehauf Corp. v. Commissioner,* 356 F.2d 975 (6th Cir.), *cert. den.* 385 U.S. 822, 87 S.Ct. 51, 17 L.Ed.2d 60 (1966).

Cases on point from other circuits include: *Wisconsin Nipple and Fabricating Corp. v. Commissioner,* 581 F.2d 1235, 1237–39 (7th Cir. 1978); *Anderson, Clayton & Co. v. United States,* 562 F.2d 972, 978–85 (5th Cir. 1977), *cert. den.* 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978); *Quinn v. Commissioner,* 524 F.2d 617, 622–23 (7th Cir. 1975); *Kahler Corp. v. Commissioner,* 486 F.2d 1, 5 (8th Cir. 1973); *Charbonnet v. United States,* 455 F.2d 1195, 1199–1200 (5th Cir. 1972); *Exel Corp. v. United States,* 451 F.2d 80, 85 (8th Cir. 1971); *United States v. California Portland Cement Co.,* 413 F.2d 161, 164 (9th Cir. 1969); *Pollack v. Commissioner,* 392 F.2d 409, 411 (5th Cir. 1968); *United States v. Fenix and Scisson, Inc.,* 360 F.2d 260, 267 (10th Cir. 1966), *cert. den.* 386 U.S. 1036, 87 S.Ct. 1474, 18 L.Ed.2d 599 (1967); *Bookwalter v. Brecklein,* 357 F.2d 78, 81–85 (8th Cir. 1966); *Stevens Bros. Foundation, Inc. v. Commissioner,* 324 F.2d 633, 640–42 (8th Cir. 1963), *cert. den.* 376 U.S. 969, 84 S.Ct. 1135, 12 L.Ed.2d 84 (1964); *Wolinsky v. United States,* 271 F.2d 865, 868 (2d Cir. 1959); *Weller v. Commissioner,* 270 F.2d 294, 298–99 (3d Cir. 1959), *cert. den.* 364 U.S. 908, 81 S.Ct. 269, 5 L.Ed.2d 223 (1960); *Goodstein v. Commissioner,* 267 F.2d 127, 132 (1st Cir. 1959).

*Wisconsin Nipple, supra,* 581 F.2d at 1237, noted that the presumption of retroactivity is based upon the declaratory theory of jurisprudence which holds that interpretive regulations merely declare what the statute meant all along. *Anderson, Clayton, supra,* 562 F.2d at 985 n. 30, also said that "strictly speaking, the question of retroactivity can arise only with respect to rules that are at least in part legislative in character," since an interpretive regulation "merely clarifies what the language of the statute was intended to convey." The court in *Anderson, Clayton,* went on, however, to discredit this legislative/interpretive distinction for purposes of retroactivity analysis. For this purpose, "the emphasis should be not whether a regulation more closely resembles the legislative or interpretive ideal type, but how the new regulation stands in relation to prior law or policy." *Id.* Our holding today comports with either mode of analysis. *See Fruehauf Corp. v.*

*Helvering v. Reynolds,* 313 U.S. 428, 61 S.Ct. 971, 85 L.Ed. 1438 (1941); *Manhatten General Equipment Co. v. Commissioner,* 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528 (1936). The implicit refusal to deny retroactive effect which thus arises when, as here, the regulation is silent on the issue can be reviewed, however, for abuse of discretion. *Dixon, supra,* 381 U.S. at 71–80, 85 S.Ct. 1301; *Automobile Club, supra,* 353 U.S. at 184, 77 S.Ct. 707; *Southern Hardwood, supra,* 411 F.2d at 564.[12] We find no abuse of discretion here.

We have found only one post-*Dixon* case which suggests that a regulation may not be applied retroactively to litigation pending when it was promulgated.[13] In *dicta* in *Chock Full O'Nuts Corp. v. United States,* 453 F.2d 300, 303 (2d Cir. 1971), the second circuit said "the Commissioner may not take advantage of his power to promulgate retroactive regulations during the course of a litigation for the purpose of providing himself with a defense based on the presumption of validity accorded to such regulations." In the instant case there is no suggestion that the Commissioner promulgated amended § 1.165–3(b)(2) in order to obtain an advantage in this lawsuit. Indeed, that would hardly be plausible inasmuch as the amendment was initially proposed in 1972[14] and this lawsuit was commenced in 1975.

■ We agree with the fifth circuit that regulations may be applied retroactively to pending litigation, subject to review for abuse of discretion. *Anderson, Clayton & Co. v. United States,* 562 F.2d 972, 978–85 (5th Cir. 1977), *cert. den.* 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978).

No case has held that the Secretary abused his discretion to promulgate retro-

active regulations merely because the regulation at issue affected a legal matter pending before a court at the time the regulation was adopted. To be sure, the case at bar is distinctive in that the district court had already issued its decision by the time the Secretary adopted [the regulation]. We do not think that fact crucial, however.

It is more important to consider how a regulation stands in respect to prior law than to focus on how it relates in time to the litigation in which the government seeks to invoke it. The court in *Chock Full O'Nuts,* for example, was addressing its quoted remarks to the taxpayer's argument that the Commissioner was trying to change settled law at the eleventh hour in order to defend against taxpayer's claim. Viewed in that light, the Second Circuit's concern is well-taken.

Courts have declined to give retroactive effect to regulations or rulings when retroactivity would work a change in settled law relied on by the taxpayer and implicitly approved by Congress, *Helvering v. R. J. Reynolds Tobacco Co.,* 306 U.S. 110, 116, 59 S.Ct. 423, 83 L.Ed. 536 (1939), when it would lead to inequality of treatment between competitor taxpayers, *International Business Machines Corp. v. United States,* 343 F.2d 914, 170 Ct.Cl. 357 (1965), *cert. denied,* 382 U.S. 1028, 86 S.Ct. 647, 15 L.Ed.2d 540 (1966), or when, in general, the result of retroactivity in a particular case would be unduly harsh, *see Woodward v. United States,* 322 F.Supp. 332, 335 (W.D.Va.) (dicta), *aff'd,* 445 F.2d 1406 (4th Cir. 1971). [*also, Lesavoy Foundation v. Commissioner,* 238 F.2d 589, 594 (3d Cir. 1956).]

From these cases we may distill a list of some of the considerations that are

---

*Commissioner, supra,* 356 F.2d 975 (6th Cir. 1966).

    *See generally* Comment, Limits on Retroactive Decision Making By The Internal Revenue Service: Redefining Abuse of Discretion Under Section 7805(b), 23 U.C.L.A.L.Rev. 529 (1976).

**12.** *See* authorities cited in note 11, *supra.*

**13.** *Dicta* to this effect in *Commissioner v. Goodwyn Crockery Co.,* 315 F.2d 110, 113 (6th

Cir. 1963), was expressly contradicted in *Helvering v. Reynolds, supra,* 313 U.S. at 433, 61 S.Ct. 971, and did not survive the Supreme Court's subsequent decision in *Dixon* and this court's decision in *Southern Hardwood, supra,* 411 F.2d 563. *See Anderson, Clayton, supra,* 562 F.2d at 981 n. 18.

**14.** 37 Fed.Reg. 7891 (April 21, 1972).

relevant to a court in reviewing the Secretary's exercise of his discretionary power to adopt retroactive regulations. That list includes: (1) whether or to what extent the taxpayer justifiably relied on settled prior law or policy and whether or to what extent the putatively retroactive regulation alters that law; (2) the extent, if any, to which the prior law or policy has been implicitly approved by Congress, as by legislative reenactment of the pertinent Code provisions; (3) whether retroactivity would advance or frustrate the interest in equality of treatment among similarly situated taxpayers; and (4) whether according retroactive effect would produce an inordinately harsh result.[19]

[19] The relationship in time between the promulgation of a regulation and litigation in which the regulation would be controlling if applied may be a component of this last factor. We reject the taxpayer's argument that the chronology should be dispositive, however. In addition, we note that the list of relevant considerations is not intended to be exhaustive. For example, in a particular case it might become relevant to consider the extent to which the new regulation responds to a policy inapplicable to earlier years.

562 F.2d at 980–81 (footnote 18 omitted).

█ None of the considerations listed above point toward an abuse of discretion in this case. First, there could have been no justifiable reliance by taxpayers on settled prior law. Taxpayers have argued that they were entitled to rely upon the prior version of § 1.165–3(b)(2) as interpreted in *Feldman v. Wood,* 335 F.2d 264 (9th Cir. 1964).[15] But there is simply no evidence of such reliance in the record.[16] Even if taxpayers had relied on *Feldman,* such reliance would not have been justifiable.[17] The Commissioner stated in 1967, three years before the lease was executed, that "the Service will not follow" *Feldman.*[18] Moreover, *Feldman* did not represent settled prior law but rather was an aberrational holding. *Landerman, supra,* 454 F.2d at 340 & n. 3, collecting cases; Rev.Rul. 67–410, 1967–2 C.B. 93. The amendment of the regulation was only meant to clarify prior law, not change it.[19]

Second, there is no reason to believe that Congress, in its post-*Feldman* (1964) treatment of § 165, has implicitly approved *Feldman* any more than it has approved the numerous cases holding to the contrary.[20] Third, there is no indication that retroactive application of the amended regulation would treat taxpayers differently than others similarly situated. Fourth, there clearly is nothing harsh about retroactive application, especially since taxpayers are permitted to amortize the adjusted basis of the building over the lease term. The regulation only affects when that amount is deductible not whether it is deductible.

The judgment of the district court is affirmed.

15. *Feldman* was the only authority favorable to taxpayers' position when they executed the lease in question in 1970. *Feldman* was subsequently followed in *Hightower v. United States,* 463 F.2d 182 (5th Cir. 1972) and rejected in *Landerman v. Commissioner,* 454 F.2d 338 (7th Cir. 1971) and *Foltz v. United States,* 458 F.2d 600 (8th Cir. 1972).

16. Since the facts were stipulated before the amended regulation was promulgated and retroactivity was not at issue in the district court, it is not surprising that there is no evidence of reliance in the record. If, however, taxpayers actually relied upon *Feldman* it still would have been prudent for counsel to demonstrate that fact since the amended regulation was proposed in 1972.

17. *See Gulf Inland Corp. v. United States,* 570 F.2d 1277, 1279 (5th Cir. 1978), suggesting that reliance upon a federal court of appeals opinion could rarely be justifiable in the context of retroactive application of tax regulations.

18. Rev.Rul. 67–410, 1967–2 C.B. 93.

19. 41 Fed.Reg. 55710 (December 22, 1976).

20. While most of the cases so holding were decided prior to the initial adoption of § 1.165–3(b)(2) in 1960, one pre-regulation case noted that its holding was consistent with the then-recently promulgated original version of § 1.165–3(b)(2). *Nickoll's Estate v. Commissioner,* 282 F.2d 895, 897 (7th Cir. 1960). *See also Landerman* and *Foltz, supra.*