Robert W. HAWKINS, Shirley A. Hawkins, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. C–3–80–41.

United States District Court, S. D. Ohio, W. D.

July 9, 1982.

---

Harry P. Jeffrey, Dayton, Ohio, for plaintiffs.

Vicki G. Cheikes, Tax Div., Dept. of Justice, Washington, D. C., James A. Wilson, Asst. U. S. Atty., Dayton, Ohio, for defendant.

DECISION AND ENTRY FINDING FOR PLAINTIFFS AND AGAINST DEFENDANT; DEFENDANT ORDERED TO REFUND APPROPRIATE AMOUNT TO PLAINTIFFS; TERMINATION ENTRY

RICE, District Judge.

This is an action, under 28 U.S.C. § 1346(a)(1), for the recovery of federal income taxes, which Plaintiffs, Robert W. and Shirley A. Hawkins, allege were overpaid, in the amount of $64,213.98, for the tax year ending on December 31, 1975. The case was submitted to the Court for a decision on the merits, all material facts having been stipulated by and between the parties (doc. # 6 and exhibits attached thereto). Findings of fact and conclusions of law are set forth below, in conformity with Fed.R. Civ.P. 52(a).

## I. FINDINGS OF FACT

The *pertinent*, stipulated facts are as follows. Plaintiffs filed a joint income tax return for the taxable year 1975, wherein their total tax liability was calculated at $134,900.71. Mr. Hawkins owned 100% of the shares in H. F. Hawkins & Son Company during 1975, and during all years subsequent thereto. The calendar year 1975 was the last year in which the Company operated under a subchapter S tax election, pursuant to I.R.C. §§ 1371–1377, and the Company was subject to ordinary corporate taxation during all years thereafter, including 1978. Finally, during the 1978 taxable year the Company earned a "new jobs" tax credit, pursuant to I.R.C. §§ 44B, 51–53, of $65,-888.39, of which only $1,674.41 could be utilized against the Company's tax liability for that year. Plaintiffs seek to apply, or to carryback, the balance of the tax credit to the 1975 tax year.

## II. CONCLUSIONS OF LAW

Plaintiffs contend that, based on I.R.C. § 53(b) and Treas.Reg. § 1.53–1(f) (1978), the Company's unused new jobs credit for 1978 may be "carried back" to 1975 and "passed through" to Mr. Hawkins under the subchapter S election which was in effect for the carryback year. If this is permitted, then Plaintiffs' refund claim for the tax year 1975 in the amount of the excess 1978 credit (which Defendant rejected after Plaintiffs filed an amended joint tax return for 1975) is proper. Defendant contends that pass-through of the new jobs credit may not be accomplished by carryback of the credit from a non-election (of subchapter S status) year to an election year.

Section 53(b) of the Internal Revenue Code provides, in general terms, for the

carryback and carryover of an unused new job credit. A relevant portion of the regulation promulgated thereunder provides as follows:

Carryback or carryover of credit subject to separate limitation. A credit subject to the separate limitation under section 53(b) that is carried back or carried over to another taxable year is also subject to the separate limitation in the carryback or carryover year. The taxpayer to whom the credit has been passed through shall not be prevented from applying the unused portion in a carryback or carryover year merely because the entity that earned the credit changes its form of conducting business if the nature of its trade or business essentially remains the same. The computation of the separate limitation in such a case shall reflect the income attributable to the taxpayer's interest in the entity in its revised form.

\* \* \* \* \* \*

Treas.Reg. § 1.53–1(f) (1978).

The parties acknowledge, and this Court agrees, that neither the above cited statute and regulation, nor any other statute, regulation, or case authority, directly permits or directly prohibits the tax treatment which Plaintiffs seek. Defendant suggests that the Court consider Treas.Regs. §§ 1.46–2(h) (1973)[1] and 1.50A–2(f) (1973), which expressly prohibit the pass-through of unused investment and work incentive credits, respectively, when carried back (or carried over) from a non-election year to an election year. Defendant also points out that the legislative history of I.R.C. § 53(b) indicates that the draftsmen intended "[t]he rules for apportioning the [new jobs] credit [to be] generally the same as under the investment tax credit." S.Rep.No.95–66, 95th Cong., 1st Sess. 75, *reprinted in* [1977] U.S.Code Cong. & Adm.News 185, 253. Accordingly, Defendant argues that Treas. Reg. § 1.53–1(f), dealing with the new jobs credit, should be interpreted like the analogous investment tax credit regulation, and thus to prohibit a carry back from a non-election year to an election year.[2]

As a final buttress to its argument, Defendant also points to a *proposed* amendment to Treas.Reg. § 1.53–1(f) which, to this Court's knowledge, was never promulgated. *See also* 1 (CCH) Stand.Fed.Tax Rep. ¶ 551J (1981) (referring to amendment in question as "proposed"). The proposed amendment, Treas.Reg. § 1.53–2(b)(2), published at 44 Fed.Reg. 76923 (1979), would *expressly* prohibit the carryback of an unused jobs credit from a non-election year to an election year. This amendment, Defendant concludes, states the "proper interpretation of the law," doc. # 10, p. 15, and should guide this Court's interpretation of I.R.C. § 53(b) and Treas.Reg. § 1.53–1(f).

Plaintiffs, in contrast, seize upon the above stated differences between regulations to support their position. Plaintiffs note that Treas.Reg. § 1.53–1(f) is simply silent on the form of the carryback which they seek, while Treas.Reg. §§ 1.46–2(h) & 1.50A–2(f) expressly prohibit such a carryback. This very difference, Plaintiffs suggest, supports their view that if the carryback they seek was intended to be prohibited, such a prohibition would *expressly* appear in Treas.Reg. § 1.53–1(f). Moreover, Plaintiffs point out that the latter regulation was promulgated some five years *after* the former regulations. The *omission* of an express prohibition in a *later* regulation, they conclude, simply indicates that the carryback they seek is not prohibited by Treas.Reg. § 1.53–1(f) or by I.R.C. § 53(b).

---

1. Treas.Reg. § 1.46–2(h) was redesignated in 1981, *see* 46 Fed.Reg. 1679 (1981), and now can be found as Treas.Reg. § 1.46–2(j) (1981).

2. The Court also discovered a private letter ruling from the Internal Revenue Service which, in a different factual setting, apparently adopts Defendant's argument with respect to the new jobs tax credit. *See* IRS Letter Rulings Reports, LTR 7916033 (January 17, 1979). However, both statute, 26 U.S.C. § 6110(j)(3), and regulation, 26 C.F.R. § 301.6110–7(b) (1981), state that such private rulings may not be used or cited as precedent. *See Rowan Co., Inc. v. United States*, 452 U.S. 247, 261 n.17, 101 S.Ct. 2288, 2296 n.17, 68 L.Ed.2d 814 (1981). Thus, said letter ruling has no impact on the case herein.

Having considered the above competing theories, this Court agrees with Plaintiffs' position. As noted above, neither the language of the statute creating the new jobs tax credit, nor the legislative history of the same, indicates that the carryback treatment Plaintiffs seek is expressly prohibited. The same result obtains after examining the regulation interpreting that statute, Treas.Reg. § 1.53–1(f), and the commentary accompanying promulgation of same. 43 Fed.Reg. 37450–37451, 60445–60447 (1978). The Court also deems it significant that the two analogous tax credit regulations, promulgated prior to the jobs credit regulation, expressly prohibit the desired tax treatment. Had the drafters of Treas.Reg. § 1.53–1(f) intended to prohibit this tax carryback, it would seem that they would have expressly so provided.

This conclusion is lent force by considering the proposed, but unpromulgated, amendment to said regulation. The history of additions or deletions (or lack of same) to a tax regulation is relevant as a guide to interpreting the meaning of a regulation. *Jewett v. C. I. R.*, —— U.S. ——, ——, 102 S.Ct. 1082, 1088, 71 L.Ed.2d 170 (1982); *Rowan Co., Inc. v. United States, supra*, 452 U.S. at 253, 101 S.Ct. at 2292. The proposed amendment does, indeed, expressly prohibit the requested tax treatment. Yet the fact that it was proposed, though not promulgated, strongly suggests that the regulation, in its present state, permits the tax treatment sought. Based on all of the foregoing, this Court finds Plaintiffs' analysis to be persuasive and, accordingly, adopts same.

It is settled that exemptions from taxation are to be construed narrowly, and that taxpayers have the burden of proving their eligibility for such exemptions (or credits, as herein). *Wilson v. United States*, 588 F.2d 1168, 1171 (6th Cir. 1978); *Harding Hospital, Inc. v. United States*, 505 F.2d 1068, 1071 (6th Cir. 1974). This Court finds that Plaintiffs have met this burden. The Court does not quarrel with Defendant's assertions that the tax code must be read together as a whole, *cf. C. I. R. v. Stickney*, 399 F.2d 828, 834 (6th Cir. 1968) (Code provisions should be read in *pari materia* ), or that, as a general rule, the tax treatment of subchapter S corporations, as compared to other corporations, is sharply differentiated. However, these general rules are belied, in the within case, by the above analysis of the relevant statute and regulation. To the extent that this conclusion raises an undesirable treatment of new job tax credits, as Defendant persuasively argues, the proper recourse would seem to be to Congress, or to the drafters of the tax regulations.

For the foregoing reasons, judgment should be hereby entered in favor of Plaintiffs and Defendant must refund the appropriate tax refund amount to the Plaintiffs.

This case is ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.