ESTATE of Aaron LEVINE, Deceased, Harvey Levine, Executor and Anna Levine, Surviving Wife, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 1184.

Docket 80–4034.

United States Court of Appeals, Second Circuit.

Argued June 6, 1980.

Decided July 10, 1980.

L. William Fishman, New York City (Rosen & Reade, Martin Rosen and Barry L. Gardiner, New York City, of counsel), for petitioners-appellants.

Richard D. Buik, Tax Div., Dept. of Justice, Washington, D. C. (M. Carr Ferguson, Asst. Atty. Gen., Tax Div., Dept. of Justice, Gilbert E. Andrews, and Jonathan S. Cohen, Washington, D. C., of counsel), for respondent-appellee.

Before FRIENDLY, KAUFMAN and TIMBERS, Circuit Judges.

FRIENDLY, Circuit Judge:

The estate of Aaron Levine and his widow Anna[1] appeal from a part of a decision of the Tax Court, 72 T.C. No. 68 (1979), which found a deficiency of $130,428.42 in Aaron Levine's 1970 income tax. The deficiency resulted from a determination by the Commissioner that the taxpayer had realized gain upon his gift, on January 1, 1970, of income producing property consisting of land and a building at 20–24 Vesey Street in New York City (the property) to a previously created trust for the benefit of three grandchildren.

The property was originally purchased on November 1, 1944, by a corporation wholly owned by Levine. On August 22, 1957, the corporation, which was in the course of dissolution, made a liquidating distribution of the property to the taxpayer. Thereafter Levine obtained two non-recourse mortgages secured by the property. One of these, for $500,000, was obtained on March 17, 1966, from the Bowery Savings Bank and represented the consolidation of numerous earlier mortgages.[2] The other, for $300,000, was obtained from the Commercial Trading Company on November 21, 1968; this was later amortized to $280,000.

Levine filed a gift tax return for 1970 reporting the transaction as follows:

20-24 Vesey Street, City, County and State of New York—Appraisal value $925,000.00

*Mortgages*

| | |
|---|---|
| Bowery Savings Bank | $500,000.00 |
| Interest accrued 12/1/69 to 12/31/69 | 2,291.67 |
| Commercial Trading* | 280,000.00 |
| Interest accrued 12/1/69 to 12/31/69 | 3,616.67 |
| | $785,908.34 |

*Expenses incurred by donor in 1969 and assumed and paid by donee:*

| | |
|---|---|
| Improvements | $117,716.53 |
| Supplies | 387.83 |
| Repairs | 1,253.93 |
| Paint | 63.60 |
| Electricity | 1,827.56 |
| Steam | 3,324.13 |
| Total expenses | 124,573.58 |
| Total mortgages, interest and expenses | 910,481.92 |
| Equity | $ 14,518.08 |

* Between November 1968 and January 1970, $20,000 of the $300,000 principal was amortized.

and paid a gift tax on the equity of $14,518.08. The propriety of this was not challenged. However, the Commissioner assessed a deficiency in income tax on the ground that Levine had realized a gain in the amount of the excess of the total mortgages, interest and expenses aggregating $910,481.34, all of which were assumed by

1. Mrs. Levine is an appellant solely because she and Mr. Levine signed a joint return for 1970. All references to "the taxpayer" or "Levine" will be to Mr. Levine.

2. The history underlying this $500,000 mortgage was stipulated to have been as follows:

(1) On October 27, 1944, a purchase money mortgage was executed for $148,000.00 in favor of Mutual Life Insurance Company of New York.

(2) On August 9, 1950, a mortgage loan for $120,108.97 was received from the Seamen's Bank for Savings and was consolidated with the $129,891.03 balance of the above purchase money mortgage into a new $250,000.00 mortgage.

(3) On July 30, 1953, a mortgage loan for $100,000.00 was received from James John Trading Corp.

(4) On August 10, 1955, a mortgage loan for an additional $100,000.00 was received from James John Trading Corp.

(5) On June 17, 1958, a mortgage loan for $214,955.77 was received from Bowery Savings Bank and was consolidated (with the $235,044.23 combined balance of the consolidated mortgage referred to in paragraph (2) hereof and the two mortgages described in paragraphs (3) and (4) of this Schedule) into a new mortgage loan of $450,000.00.

(6) On May 17, 1963, a mortgage loan for $120,000.00 was received from The Morris Morgenstern Foundation.

(7) On March 17, 1966, a mortgage loan of $37,001.77 was received from Bowery Savings Bank and was consolidated (with the $462,998.23 balance of the consolidated mortgage referred to in paragraph (5) of this Schedule and the mortgage referred to in paragraph (6) of this Schedule) into a new mortgage loan of $500,000.00, which became a standing mortgage.

the donee, over Levine's adjusted basis, which, as increased by stipulation between the parties, was $485,429.55. The result was an excess of $425,051.79 and, upon application of capital gains rates, a deficiency of $130,428.42 in income tax. The Tax Court upheld the Commissioner largely on the authority of *Crane v. C.I.R.*, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947), which had affirmed this court's decision, 153 F.2d 504 (1945) (L. Hand, J.). This appeal followed.

◼ At first blush the layman and even the lawyer or judge not conditioned by exposure to tax law would find it difficult to understand how a taxpayer can realize $425,051.79 in gain by giving away property in which he possessed an equity of $14,518.08. Doubtless Mrs. Crane experienced a similar difficulty when she was held to have realized $275,500 (for a net taxable gain of $23,031.45), after she netted a mere $2,500 on the sale of an apartment building that she had inherited subject to a $255,000 mortgage and $7,042.50 in overdue interest payments, and had sold, under threat of foreclosure, subject to the same mortgage principal and $15,857.71 in defaulted interest payments. However, as stated in the ironic dictum of a distinguished tax practitioner's imaginary Supreme Court opinion,[3] "[e]veryday meanings are only of secondary importance when construing the words of a tax statute and are very seldom given any weight when a more abstruse and technical meaning is available."[4] In any event, *Crane* binds us whatever the yearnings of our untutored intuitions may be. What is more, few scholars quarrel with the wisdom of its holding, as distinguished from some of its language including the famous note 37, 331 U.S. at 14, 67 S.Ct. at 1054, of which more hereafter.[5]

Instead of addressing himself directly to the ultimately dispositive question, what did Mrs. Crane receive, Chief Justice Vinson stated in his *Crane* opinion, 331 U.S. at 6, 67 S.Ct. at 1051, that "Logically, the first step . . . is to determine the unadjusted basis of the property . . . ." This must have struck Mrs. Crane as peculiar since she had claimed what would normally be the most favorable stance for the Commissioner in the determination of gain, namely, that her basis was zero. The answer to the Chief Justice's question lay in then § 113(a)(5), incorporated as modified in I.R.C. § 1014(a), which says that if property is acquired from a decedent the unadjusted basis is "the fair market value of such property at the time of such acquisition." On Mr. Crane's death the property had been appraised—somewhat unscientifically one might guess—as having exactly the value of the encumbrances, $262,042.50. If "property" as used in § 113(a) meant simply what the property was worth to Mrs. Crane, i. e., her "equity", her basis was zero, as she contended. However, *Crane* accepted the Commissioner's theory that since the term referred to "the land and buildings themselves, or the owner's rights in them, undiminished by the mortgage, the basis was the appraised value of $262,042.50."

The next step was to determine whether the unadjusted basis should be adjusted by deducting depreciation "to the extent allowed (but not less than the amount allowable)" as required by § 113(b)(1)(B), now incorporated as modified in I.R.C. § 1016(a)(2). Here again the parties took unconventional positions. Proceeding from her zero basis theory, Mrs. Crane maintained that no depreciation could be taken, although she had in fact taken depreciation deductions totalling $25,500, 331 U.S. at 3 n.

3. D. Nelson Adams, Exploring the Outer Boundaries of the Crane Doctrine; an Imaginary Supreme Court Opinion, 21 Tax L. Rev. 159, 164 (1966).

4. The *Crane* opinion insisted that "the words of statutes—including revenue acts—should be interpreted where possible in their ordinary, everyday senses." [Footnote omitted.] 331 U.S. at 6–7, 67 S.Ct. at 1051.

5. In addition to Mr. Adams' article, *supra* note 3, see, e. g., Bittker, Tax Shelters, Nonrecourse Debt, and the *Crane* Case, 33 Tax L.Rev. 277 (1978); Del Cotto, Basis and Amount Realized under *Crane*: A Current View of Some Tax Effects in Mortgage Financing, 118 U.Pa.L.Rev. 69 (1969). None of these excellent articles was cited in the briefs.

2, 67 S.Ct. at 1049. The Commissioner, true to his theory of basis, see §§ 23(n) and 114(a) of the 1938 Act, now I.R.C. § 167(g), thought that depreciation deductions of $28,045.10 should have been taken, and the Court agreed.

"At last", said the Chief Justice, 331 U.S. at 12, 67 S.Ct. at 1054, "we come to the problem of determining the 'amount realized' on the 1938 sale." In fact the Court's answers to the two earlier questions had predetermined the answer to the dispositive one. If non-recourse mortgages contribute to the basis of property, then they must be included in the amount realized on its sale. Any other course would render the concept of basis nonsensical by permitting sellers of mortgaged property to register large tax losses stemming from an inflated basis and a diminished realization of gain. It would also permit depreciation deductions in excess of a property holder's real investment which could never subsequently be recaptured. Although the Court bolstered its holding by explicating the use of the word "property" in § 111(a) and (b) of the 1938 Act, now I.R.C. § 1001(a) and (b), and with certain other arguments,[6] it was hardly necessary to go beyond the statement that "[i]f the 'property' to be valued on the date of acquisition is the property free of liens, the 'property' to be priced on a subsequent sale must be the same thing." [Footnote omitted.] 331 U.S. at 12, 67 S.Ct. at 1054.[7]

Taxpayer argues that, be all this as it may, *Crane* is inapplicable because the transaction here was a gift and not a sale.

Apart from the general incongruity in finding that a gift yields a realized gain to the donor, petitioner argues that it is by no means clear how the Code's gross income, realization and recognition provisions apply to a donor's "gain" realized as incidental to a gift. Section 61(a)(3) defines gross income to include "[g]ains derived from dealings in property"—a term seemingly broad enough to include gains from gifts. The same is true with respect to § 1001(a), which provides that "[t]he gain from the sale *or other disposition of property* shall be the excess of the amount realized therefrom over the adjusted basis provided in section 1011 for determining gain . . . ." (Emphasis supplied). Apparent difficulty is encountered, however, when we come to the critical provision, § 1001(c), entitled "[r]ecognition of gain or loss", which states that "[e]xcept as otherwise provided in this subtitle, the entire amount of the gain or loss, determined under this section, on *the sale or exchange* of property shall be recognized." (Emphasis supplied).

█ Taxpayer suggests that the change in language from "other disposition of property" in § 1001(a), which seems broad enough to encompass a gift, but see *United States v. Davis*, 370 U.S. 65, 68–69 & n. 5, 82 S.Ct. 1190, 1192, 8 L.Ed.2d 335 (1962), to "sale or exchange" in § 1001(c), which would appear not to be so, postpones recognition of any "gain" realized in the instant transaction. This, he argues, is appropriate because while a sale or exchange results in the transferee's acquisition of a new basis, see § 1012, a gift ordinarily transfers the donor's basis plus any gift tax paid to the donee, § 1015, and tax on any gain can thus

**6.** The most notable, 331 U.S. at 13–14, 67 S.Ct. at 1054, which had been stressed in Judge L. Hand's opinion in this court, 153 F.2d at 505–06, looked to Mrs. Crane's concession that "if she had been personally liable on the mortgage and the purchaser had either paid or assumed it, the amount so paid or assumed would be considered a part of the 'amount realized' within the meaning of § 111(b)"—a proposition established by *United States v. Hendler*, 303 U.S. 564, 58 S.Ct. 655, 82 L.Ed. 1018 (1938). The Court found no essential distinction between such personal liability and Mrs. Crane's non-recourse mortgage. Bittker, *supra*, 33 Tax L.Rev. at 281–82, criticizes this portion of the opinion as conceptual sleight-of-hand, although he concludes that the identification of non-re-

course and personal obligations was practically necessitated by considerations of administrative simplicity.

**7.** Had *Crane* begun with the ultimate question, Mrs. Crane's "amount realized", and reached the intuitive answer, $2,500, the need to preserve the Code's depreciation apparatus might well have forced the Court to adopt the concept of "negative basis". For a glimpse at this road not taken, see *Parker v. Delaney*, 186 F.2d 455, 459–60 (1 Cir. 1950) (Magruder, C. J., concurring), *cert. denied*, 341 U.S. 926, 71 S.Ct. 797, 95 L.Ed. 1357 (1951); Chirelstein, Federal Income Taxation 225–33 (1977).

fairly be postponed until the donee engages in a taxable disposition. However, this argument overlooks

> [t]he general rule . . . that when property is sold or otherwise disposed of, any gain realized must also be recognized, absent an appropriate nonrecognition provision in the Internal Revenue Code.

[Footnote omitted.] *King Enterprises v. United States*, 418 F.2d 511, 514 (Ct.Cl. 1969). See 3 Mertens, Federal Income Taxation, § 20.13 at 50 n. 4 (1980). A comparison of the present § 1001(c) with its pre-1976 predecessors, which, of course, are here controlling, suggests that § 1001(c) merely limits nonrecognition to certain transactions described in detail elsewhere in the Code and does not confer it on all dispositions other than sales or exchanges.[8] However, we need not decide this question in view of our disposition of the case.

■ Levine relies also on the established principle that a gift of appreciated unmortgaged property does not give rise to a gain, even when deductions have been taken for business expenses which were necessary to the appreciation of the property. *Campbell v. Prothro*, 209 F.2d 331 (5 Cir. 1954). See also *First National Industries, Inc. v. C.I.R.*, 404 F.2d 1182, 1183 (6 Cir. 1968), *cert. denied*, 394 U.S. 1014, 89 S.Ct. 1633, 23 L.Ed.2d 41 (1969); *The Humacid Company v. C.I.R.*, 42 T.C. 894, 913 (1964). However, the transaction here in question was not a "pure" gift. The donee assumed not only the $785,908.34 in mortgages and accrued interest for which Levine was not personally liable but also the $124,573.58 of 1969 expenses, not constituting a lien, for which he was. If the donee had paid the latter sum directly to Levine, this case would clearly be governed by *Crane* since the donor would have received "boot". However, the assumption of another's legal obligation or debt is considered income under *Old Colony Trust Co. v. C.I.R.*, 279 U.S. 716, 729, 49 S.Ct. 499, 504, 73 L.Ed. 918 (1929), and *United States v. Hendler, supra*, 303 U.S. at 566, 58 S.Ct. at 656. We can thus see no sound reason for reaching a result differing from that in *Crane* on the facts of this case.[9] We need not decide what the result

**8.** Prior to the Tax Reform Act of 1976, 90 Stat. 1784, what is now I.R.C. § 1001(c) was incorporated in § 1002. The pertinent provisions of the Code then read:

(a) Computation of gain or loss.—The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 1011 for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.

. . . . .

(c) Recognition of gain or loss.—In the case of a sale or exchange of property, the extent to which the gain or loss determined under this section shall be recognized for purposes of this subtitle shall be determined under section 1002.

§ 1002. Recognition of gain or loss.

Except as otherwise provided in this subtitle, on the sale or exchange of property the entire amount of the gain or loss, determined under section 1001, shall be recognized.

Under this language the implication is far clearer that recognition generally accorded all dispositions yielding an "amount realized" is governed "[i]n the case of a sale or exchange" by § 1002, which in turn flags the Code's specific nonrecognition sections.

Indeed, the Senate Report accompanying the 1954 Code observed that § 1002 "provides that the entire amount of gain or loss determined under section 1001 shall be recognized *except as otherwise provided in this subtitle*" (emphasis supplied), S.Rep.No.1622, 83rd Cong., 2d Sess. 422 (1954), reprinted in [1954] U.S.Code Cong. & Admin.News 5065. The wording of still earlier versions of § 1001(c), which list specific transactions for which no gain was recognized, provides further evidence that this subsection functions to confer nonrecognition on certain exchanges rather than to limit recognition to sales or exchanges. See, e. g., § 202(c) of the Revenue Act of 1924, 43 Stat. 230. See generally 3 Mertens, *supra*, §§ 20.02–20.15 (discussing § 1001 and its predecessors).

**9.** No difficulty is caused by the famous footnote 37 in *Crane*, 331 U.S. at 14, 67 S.Ct. at 1054-1055, which reads:

Obviously, if the value of the property is less than the amount of the mortgage, a mortgagor who is not personally liable cannot realize a benefit equal to the mortgage. Consequently, a different problem might be encountered where a mortgagor abandoned the property or transferred it subject to the mortgage without receiving boot. That is not this case.

should be if Levine had merely donated the property subject to non-recourse mortgages without an explicit "sale" element—in this case, the donee's assumption of his 1969 personal liabilities. Compare *Johnson v. C.I.R.*, 495 F.2d 1079, 1083 & n. 8 (6 Cir.), cert. denied, 419 U.S. 1040, 95 S.Ct. 527, 42 L.Ed.2d 317 (1974).

In opposition to this the taxpayer relies on the "net gift" cases, notably *Turner v. C.I.R.*, 49 T.C. 356 (1968), aff'd per curiam, 410 F.2d 752 (6 Cir. 1969), and *Hirst v. C.I.R.*, 63 T.C. 307 (1974), aff'd, 572 F.2d 427 (4 Cir. 1978) (en banc). These cases involved intra-family gifts of low-basis property conditioned on the donee's paying the donor's gift tax liability. Although the donor may subtract any gift tax liability assumed by the donee from the market value of the gift in computing gift tax, Rev. Ruling 71–232, 1971–1 C.B. 275, the Commissioner has long asserted that gift tax paid by the donee may constitute capital gains to the donor insofar as it exceeds the latter's basis on the donated property. The Commissioner's views did not prevail in *Turner* and *Hirst*. Yet in *Johnson v. C.I.R.*, supra, they subsequently triumphed in the same circuit that had decided *Turner*. While the facts in *Johnson* were peculiarly favorable to the Commissioner, we consider that it effectively overruled *Turner* as a precedent.[10] With respect to *Hirst*, we join the commentators in believing that District Judge Thomsen's opinion written for the panel in *Hirst*, 572 F.2d at 434, which was adopted by two members of the *en banc* court, is far more persuasive than the contrary view of the prevailing opinions of that court. See, e. g., Taxation—Conditional Net Transfers: No Income Tax Consequences to Donor—*Hirst v. Commissioner*, 572 F.2d 427 (4th Cir. 1978), 52 Temple L.Q. 139 (1979); Federal Income Tax–Income Taxation of Net Gifts After *Hirst v. Commissioner*, 32 Rutgers L.Rev. 389 (1979); Federal Income Tax—Net Gift Doctrine—No Taxable Income Results From Gift Given Subject to Condition that Donee Pay Gift Tax, 63 Cornell L.Rev. 1974 (1978).

Although the Commissioner's position in the net gift cases goes further, the holding of *Johnson* and the reasoning of the dissent in *Hirst* are consistent with the narrow ground on which we rest our decision here, since the gift tax, like Levine's 1969 expenses, is a personal liability of the donor. See *Hirst v. C.I.R.*, supra, 572 F.2d at 436 (Thomsen, J., panel opinion). This is not to say that we reject the broader analysis urged by the Commissioner and adopted by the Tax Court in this case, to wit, that *Crane* mandates that the transfer of property encumbered by any debt, non–recourse or personal, results in potentially taxable benefits even in the case of a "pure" gift.[11] We simply leave this benefit orientation and the other arguments advanced to another day. It is comforting to note, however, that an analysis of Levine's tax returns indicates his successful conversion of the appreciated value of the Vesey Street property into "benefits" at least as tangible as those in *Crane*. The calculation of Le-

---

Here the value of the property exceeded the amount of the mortgages. As developed in the text, the assumption of the $124,573.58 in indebtedness is equivalent to "boot"—if indeed a "boot" requirement survives. See *Parker v. Delaney*, supra, 186 F.2d at 458 (applying *Crane* where the mortgagor abandoned property to the mortgagee and received nothing). In any event we read the *Crane* footnote's emphasis on "boot" as simply evidentiary; the receipt of boot was thought to show that the property was worth more than the amount of the mortgages, see *Parker v. Delaney*, supra, at 458 ("Boot served to show [an excess of value over the mortgages] in the Crane case, but the payment of boot is of course not the only means of showing whether or not value is equal to or more than the liens on the property disposed of.")

**10.** The *Johnson* court stated that "*Turner* has no precedential value beyond its peculiar fact situation, in view of the Commissioner's concessions in that case both in the Tax Court and on appeal to this Court," 495 F.2d at 1086.

**11.** See 331 U.S. at 14, 67 S.Ct. at 1055 (if the holder of encumbered property "transfers subject to the mortgage, the benefit to him is as real and substantial as if the mortgage were discharged, or as if a personal debt in equal amount had been assumed by another"). Compare Bittker, supra, 33 Tax L.Rev. at 282–83.

vine's taxable gain, as found by the Tax Court, may be presented as follows:

(1) Amount realized
  (a) Expenses assumed by donee — $124,573.00
  (b) Mortgages — 780,000.00
  (c) Interest payments assumed by donee — 5,908.34
  (d) Total — $910,481.34

(2) Less: Adjusted basis
  (a) Unadjusted basis [12] — $385,485.02
  (b) Plus: Capital Improvements — 334,452.00
  (c) Improvements paid for by donee — 117,716.53
  (d) Subtotal — 837,743.55
  (e) Less: Depreciation — 352,314.00
  (f) Adjusted basis — $485,429.55

(3) Gain — $425,051.79

Of the total taxable gain of $425,051.79, the sum of $124,573.00 may be allocated directly to the 1969 expenses which Levine shifted to the donee trust. As was previously noted, these expenses are closely akin to the "boot" of $2,500 received by Mrs. Crane. In addition Levine's mortgage schedule, *supra* note 2, indicates that of the $780,000 in mortgages on the Vesey Street property at the time of its transfer, at least $235,044.23 derived from an outstanding mortgage which Levine acquired with the property in 1957, while the remaining $544,955.77 represents the net non-recourse indebtedness incurred during the period of Levine's ownership. As the table above indicates, $334,452 of the later amount was reinvested in capital improvements. Since the original mortgage of $235,044.23 must be assumed to have contributed toward Levine's unadjusted basis in the property,[13] and the subsequent capital improvements adjusted Levine's basis upward by the extent of their value, $569,496.23 (or $235,044.23 + $334,-452.00) in basis credit derives solely from the non-recourse mortgages. Yet, upon disposition of the property in 1970 Levine's stipulated basis was merely $485,429.55. The shortfall between this and the aggregate contribution of the non-recourse mortgages, i. e., $84,066.68, can only be explained by depreciation deductions that Levine could not have taken *but for* the mortgages. Finally, there are two additional sources of "benefit" in this case with no analogue in *Crane*. One is the sum of $210,503.77 out of Levine's net borrowings of $544,955.77, see discussion *supra*, which was apparently not reinvested in capital improvements on the property, and which the taxpayer may thus be considered to have "pocketed". The second is the $5,908.34 in interest payments owed by the taxpayer but assumed by the donee.[14] Together, these four varieties of "benefit" sum exactly to what was found to be the taxpayer's total taxable income:

  (a) Expenses assumed by donee — $124,573.00
  (b) Depreciation resulting from non-recourse mortgages — 84,066.68
  (c) Pocketed mortgage funds — 210,503.77
  (d) Interest assumed by donee — 5,908.34
  TOTAL — $425,051.79

To tax these "benefits" upon a disposition, at capital gains rates and without interest, is scarcely harsh. Failure to do so would mean, so far as we can see, that the $210,-503.77 which the taxpayer obtained for his personal use by non-recourse loans against the appreciation of the property would never be taxed either as ordinary income or as gain (although, unless paid off by the donee, it would diminish any realization on the property), and that the benefits obtained by the depreciation deductions would

---

12. The record does not indicate Levine's unadjusted basis, but this can readily be calculated by subtracting capital improvements from, and adding depreciation deductions to, the stipulated adjusted basis of $485,429.55.

13. Levine acquired his encumbered property at a basis equal to its market value, I.R.C. § 334(a). Since any subsequent payments on the principal of the original mortgage would not have increased Levine's basis, see *Ford v. United States*, 311 F.2d 951, 953–55 (Ct.Cl. 1963), this mortgage must be deemed to be included in the original basis of the property.

14. The Commissioner in *Crane* did not include a similar sum of $15,857.71 in interest payments assumed by the buyer of the mortgaged property, see 331 U.S. at 4 n.6, 67 S.Ct. at 1050, apparently because interest due was a deductible item. This issue has not been raised before us.

remain untaxed unless and until the donee sold the property, when they would operate as a reduction of the donee's adjusted basis which was passed on to the donee. In light of the seeming equity of the result reached, an otherwise similar case lacking the element of personal debt assumed by the donee might lead us to look with sympathy on the scant case law suggesting that the *Crane* principle may apply even to "pure" gifts, see *Malone v. United States*, 326 F.Supp. 106 (N.D.Miss.1971), aff'd, 455 F.2d 502 (5 Cir. 1972), even though a taxpayer could avoid application of *Crane* by withholding his beneficence until death. For reasons we have indicated, we simply do not find it necessary to decide that broader question on the facts here before us.

The judgment of the Tax Court is affirmed.