BERNARD AND JOYCE MADORIN, PETITIONERS *V.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 28963-81.     Filed April 11, 1985.

---

*Stephen N. Engberg* and *Michael A. Klein*, for the petitioners.

*Judy Jacobs*, for the respondent.

OPINION

DAWSON, *Chief Judge*: Respondent determined a deficiency of $27,618 in petitioners' Federal income tax for the taxable year 1978. The issues for decision are: (1) Whether section 1.1001–2(c), example (5), Income Tax Regs., should be declared invalid as an unwarranted extension of sections 671, 674, and 1001;[1] (2) if the regulation is' valid, whether the regulation should be applied retroactively; and (3) if the regulation is applied retroactively against petitioners, whether the gain recognized by petitioners should be treated as ordinary income or long-term capital gain.

This case was submitted fully stipulated pursuant to Rule 122.[2] The stipulation of facts and the attached exhibits are incorporated herein by this reference. The pertinent facts are summarized below.

Petitioners Bernard and Joyce Madorin were residents of Chicago, Illinois, at the time they filed their petition in this case. On December 19, 1975, Bernard Madorin (petitioner), as grantor, established four separate irrevocable trusts: the Miles Trust; the Mark Trust; the Melanie Trust; and the Bernard Descendant's Trust. The trust agreement designated Richard Coen (Coen) as the trustee of each of the four trusts. Coen was at all times a "nonadverse party" as defined by section 672(b). Further, he was not a "related or subordinate" party as defined by section 672(c). A provision in the trust agreement gave the trustee the power to add one or more section 501(c)(3) charitable organizations as beneficiaries to any of the trusts. As a result of this provision, petitioner, the grantor, was

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in. effect during the year in question.

[2] All Rule references are to the Tax Court Rules of Practice and Procedure.

treated as the owner of the four trusts pursuant to the provisions of section 674(a).

On or about December 19, 1975, petitioner funded each of the trusts with $5,075 in cash. Petitioners filed United States Quarterly Gift Tax Returns (Forms 709) with respect to the gifts. The $5,075 gift to each trust was its only funding.

On December 19, 1975, each of the four trusts contributed $5,010 to Metro Investment Co. (Metro), an Illinois partnership. The trusts each acquired a one-ninth interest in Metro. On or about December 22, 1975, Metro contributed $45,000 to Saintly Associates (Saintly), a partnership involved in servicing the production of motion pictures. Of the $45,000 invested, approximately $20,000 was attributable to the contributions made by the four trusts. On October 17, 1975, Saintly had entered into an agreement with Warner Bros., Inc., to perform all services necessary to produce a motion picture. To finance the performance of these services, Saintly obtained a nonrecourse loan of $3,270,000 from Security Pacific National Bank.

On petitioners' 1975 through 1977 Federal income tax returns they reported the following losses and income from the four trusts:

| 1975 | Loss | ($50,709.60) |
| 1976 | Loss | (20,753.92) |
| 1977 | Income | 1,544.28 |

On January 1, 1978, Coen, the trustee of the four trusts, irrevocably renounced his power to add beneficiaries to each trust. As a result, the trusts ceased to be grantor trusts and petitioner, the grantor, was no longer considered the owner of the trusts under section 674(a). Petitioners reported no gain or loss from the trusts on their 1978 return.

In August 1981, respondent sent petitioners a notice of deficiency. Relying on section 1.1001–2(c), example (5), Income Tax Regs. (hereinafter referred to as example (5) or the regulation),[3] respondent determined that the grantor was the

---

[3]Sec. 1.1001–2(c), example (5), Income Tax Regs., provides:

"In 1975 C, an individual, creates T, an irrevocable trust. Due to certain powers expressly retained by C, T is a 'grantor trust' for purposes of subpart E of part 1 of subchapter J of the Code and therefore C is treated as the owner of the entire trust. T purchases an interest in P, a partnership. C, as owner of T, deducts the distributive share of partnership losses attributable to the partnership interest held by T. In 1978, when the adjusted basis of the partnership interest held by T is $1,200, C renounces the powers previously and expressly retained that initially

owner of the partnership interests, and when the trusts ceased to be grantor trusts, there was a disposition of the trusts' assets, i.e., the partnership interests in Saintly via Metro, by the grantor to the four trusts.[4]

## I. Validity of the Regulation

Petitioners contend that example (5) is invalid as an unreasonable interpretation of sections 671, 674, and 1001. Petitioners argue that the grantor of a trust should be "treated as the owner" only for the limited purpose of attributing to him items of income, deductions, and credits. This contention embodies petitioners' argument that (1) the trust should be treated as the partner and owner of the partnership interest,

---

resulted in T being classified as a grantor trust. Consequently, T ceases to be a grantor trust and C is no longer considered to be the owner of the trust. At the time of the renunciation all of P's liabilities are liabilities on which none of the partners have assumed any personal liability and the proportionate share of which of the interest held by T is $11,000. Since prior to the renunciation C was the owner of the entire trust, C was considered the owner of all the trust property for Federal income tax purposes, including the partnership interest. Since C was considered to be the owner of the partnership interest, C not T, was considered to be the partner in P during the time T was a 'grantor trust.' However, at the time C renounced the powers that gave rise to T's classification as a grantor trust, T no longer qualified as a grantor trust with the result that C was no longer considered to be the owner of the trust and trust property for Federal income tax purposes. Consequently, at that time, C is considered to have transferred ownership of the interest in P to T, now a separate taxable entity, independent of its grantor C. On the transfer, C's share of partnership liabilities ($11,000) is treated as money received. Accordingly, C's amount realized is $11,000 and C's gain realized is $9,800 ($11,000 − $1,200)."

[4] Respondent claims petitioners' 1978 taxable income was understated by $49,919.24. (We view as irrelevant the $0.76 difference between this amount and that shown in the schedule accompanying the notice of deficiency.) Such amount was determined in the following manner:

| | |
|---|---|
| Petitioners' share of Saintly's unrealized receivables via Metro | [1]$52,320.00 |
| Less: | |
| Petitioners' adjusted basis in Saintly via Metro | [2](2,400.76) |
| Petitioners' realized gain per sec. 1001 and regulations thereunder | 49,919.24 |

[1] Petitioners' share of Saintly's unrealized receivables via Metro was determined as follows:

| | |
|---|---|
| $3,270,000 | Saintly's liability in 1/1/78 |
| × 3.6% | Metro's interest in Saintly |
| × 4/9 | Petitioners' interest in Metro |
| 52,320 | |

[2] Petitioners' adjusted basis in Saintly via Metro was determined as follows:

| | |
|---|---|
| $20,000.00 | Cash contribution |
| (50,709.60) | 1975 loss |
| (20,753.92) | 1976 loss |
| 1,544.28 | 1977 income |
| 52,320.00 | Partnership liability |
| 2,400.76 | |

and (2) the trust maintains a separate transactional identity. According to petitioners, the interpretation of "owner" in example (5) to mean owner of the trust's assets is inconsistent with section 671. Respondent contends, however, that example (5) is a valid interpretation of the applicable statutory provisions. We agree with respondent.

It is well established that regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes." *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501 (1948). Section 7805(a) gives the Commissioner broad authority to promulgate needful regulations. See *United States v. Correll*, 389 U.S. 299, 306 (1967). As such, regulations "should not be overruled except for weighty reasons." *Bingler v. Johnson*, 394 U.S. 741, 750 (1969), quoting *Commissioner v. South Texas Lumber, Co.*, supra at 501.

We note, however, that "Regulations must, by their terms and in their application, be in harmony with the statute. A regulation which is in conflict with or restrictive of the statute is, to the extent of the conflict or restriction, invalid." *Citizen's National Bank of Waco v. United States*, 417 F.2d 675, 679 (5th Cir. 1969), quoting *Scofield v. Lewis*, 251 F.2d 128, 132 (5th Cir. 1958).

The Supreme Court has ruled that statutory terms should be given their "usual, ordinary and everyday meaning." *Old Colony Railroad Co. v. Commissioner*, 284 U.S. 552, 561 (1932). We agree with respondent's contention that defining "owner * * * of a trust" under section 674 (and section 671) to mean owner of the trust's assets is consistent with the usual, ordinary, and everyday meaning of the word. Application of the grantor trust provisions generally results in nonrecognition of the trust (or a portion thereof) as an entity separate from the grantor. See *Estate of O'Connor v. Commissioner*, 69 T.C. 165, 174 (1977).

Petitioners set forth several arguments toward establishing that "owner" as defined in example (5) is inconsistent with the intended meaning of section 671. First, they appeal to the language of section 671. Section 671 states in part:

Where it is specified in this subpart that the grantor or another person shall be treated as the owner of any portion of a trust, there shall then be included in computing the taxable income and credits of the grantor or the other person those items of income, deductions, and credits against tax of the

trust which are attributable to that portion of the trust to the extent that such items would be taken into account under this chapter in computing taxable income or credits against the tax of an individual. * * *

Petitioners assert that the plain language of section 671 limits the attributes of ownership to the imputation of income, deductions, and credits only. We disagree. There is nothing on the face of the statute which tells us that that is the exclusive attribute of ownership. Section 671 specifies one result of being an "owner," but it does not specifically limit the meaning to that result.

Second, petitioners point to the legislative history of section 671. Petitioners assert that the Senate and House committee reports[5] indicate that Congress intended to limit the attributes of ownership to the reporting of income, deductions, and credits. Petitioners argue that the stated purpose for enacting sections 671 through 679 was to bring together "the rules for determining taxability of trusts falling within the purview of section 22(a) as well as those covered by sections 166 and 167 [of the Internal Revenue Code of 1939]."[6] As such "These provisions generally adopt the approach of the [Clifford] regulations (and the two provisions of existing law)."[7] Petitioners state that prior to 1954, the existing grantor trust rules attributed only income to the grantor. They assert that congressional intent in using the word "owner" was to remedy the preexisting condition by also allowing deductions, losses, and credits attributable to the trust to flow through to the grantor's individual tax return along with the items of income.

We find petitioners' argument to be unpersuasive. The authorities cited in support of petitioners' argument do not specifically state that "owner" was used solely as a device to include items of deductions, losses, and other allowances.[8]

---

[5]S. Rept. 1622, 83d Cong., 2d Sess. 364 (1954); H. Rept. 1337, 83d Cong., 2d Sess. A211 (1954).

[6]S. Rept. 1622, *supra* at 364; H. Rept. 1337, *supra* at A211.

[7]S. Rept. 1622, *supra* at 86; H. Rept. 1337, *supra* at 63.

[8]Petitioners cite the following authorities in support of their proposition: II American Law Institute Federal Income Tax Statute, secs. X850–X860 (Feb. 1954 draft), and accompanying explanations: B. Bittker, Federal Income, Estate and Gift Taxation, ch. 80 (1981); Kamin, Surrey & Warren, "The Internal Revenue Code of 1954: Trusts, Estates and Beneficiaries," 54 Colum. L. Rev. 1237 (1954). Petitioners cite one passage from the accompanying explanations to the A.L.I. reports which they believe to be conclusive of the legislative intent:

"The various sections in this subpart provide that "the grantor shall be treated as the owner" of certain portions of a trust. This seems to be the present rule, giving the grantor the trust's deductions. * * * The *Clifford* Regulations, fail to provide that the grantor may take the trust's

Absent a clear and unambiguous legislative directive in this matter, limiting the usage of the word "owner," we will apply the usual, ordinary, and everyday meaning of the word.

Third, petitioners argue that a grantor trust maintains its existence as a transactional entity separate and distinct from its grantor for Federal income tax purposes. In support of their contention, petitioners direct us to several cases. Petitioners' reliance upon these cases is misplaced.

Petitioners rely heavily upon *W & W Fertilizer Corp. v. United States*, 208 Ct. Cl. 443, 527 F.2d 621 (1975), in which the Court of Claims addressed the issue of whether a corporation's subchapter S status was automatically terminated when a shareholder transferred his stock into a grantor trust of which he was the grantor. The Commissioner contended that when the shareholder transferred his stock to the trust, the subchapter S election terminated because having a trust as a shareholder disqualified the corporation as a "small business corporation."[9] The taxpayer, however, argued that a separate trust entity did not exist because the grantor was considered the "owner" of the trust corpus. After examining the language of sections 671 and 1371(a) and their legislative history, the court held that "ownership" extended only to the attribution of income, deductions, and credits from the trust.

In *W & W Fertilizer Corp.*, the court rendered its decision on the basis of the congressional policy inherent in restricting the ownership of subchapter S corporations to individuals and estates. The intent was to provide a narrow benefit to certain classes of taxpayers. A specific requirement of form was established. Hence, when the grantor trust was examined, its specific form rather than the substance was accepted. The court wrote:

The "grantor trust rules" treat the grantor as if he were the owner in cases where he has reserved to himself some of the powers normally attendant to

---

deductions. * * *
   "The scope of the ownership rule is provided in section X850 [corresponding to section 671], which extends the rule to credits against tax, so that if a trust receives interest on partially tax-exempt bonds the grantor may use the credit which is provided by section X450. * * *"
   [II American Law Institute Federal Income Tax Statute, *supra* at 452.]

   We do not find this to be conclusive or convincing proof that Congress intended to use the word "owner" only for the purpose of attributing income, deductions, and credits to the grantor.
   [9]Prior to the Tax Reform Act of 1976, a trust was not permitted to be a shareholder of a subch. S corporation under sec. 1371.

outright ownership. Thus, their design is to expand the coverage of the taxing statute. On the other hand, Subchapter S was enacted as a remedial measure to relieve qualifying small business corporations of a tax otherwise payable. Section 1371(a)(2) limits the benefits of the Act to corporations whose stock is owned solely by individuals or estates. Where such a deliberately specific qualification is imposed, we must strictly apply it lest the narrow benefit intended by Congress be unduly broadened. Hence, the "grantor trust rules," with the very purpose of expansion, and the qualification requirements of section 1371(a), with their restrictive purpose, are not analogous, and their comparison is not supportive of the taxpayer in this case. [208 Ct. Cl. at 455; 527 F.2d at 627–628.]

We, therefore, think that *W & W Fertilizer Corp.* has limited applicability. It is an exceptional example where form of ownership controls in order that congressional intent be carried out. We are not concerned in the instant case with a statute that requires that a specific form be satisfied. Moreover, the effect of the decision in *W & W Fertilizer Corp.* is not that the grantor is not considered the owner of the trust corpus for other tax purposes but that there is a disqualification from a benefit that was not intended to be bestowed upon a particular form of ownership.

Petitioners also cite *Swanson v. Commissioner*, 518 F.2d 59 (8th Cir. 1975), affg. T.C. Memo. 1974–61, and *Estate of O'Connor v. Commissioner*, 69 T.C. 165 (1977). We agree with respondent, however, that these cases more aptly support respondent's position than that of petitioners.

In *Swanson v. Commissioner, supra,* life insurance policies on the grantor's life were transferred to grantor trusts for valuable consideration. The Commissioner contended that pursuant to section 101(a)(2) each of the trusts was required to recognize as gross income a proportionate amount of the proceeds of the policies that matured upon the grantor's death. The taxpayer claimed that the transfer was to the grantor/insured, and therefore, an exception to section 101(a)(2) had been met. At issue in *Swanson* was whether the trusts and the grantor/insured were the same entity per the definition of "owner" under section 671. While this Court did not directly address this issue, the Eighth Circuit, in its affirmance of our opinion held that "owner" under section 671 meant "owner" in the legal sense of the word, and held that the policies had in fact been transferred to the grantor/insured. The Eighth Circuit declared:

We cannot accept the government's contention that in this case Swanson, the grantor of the grantor-trusts, is not deemed the owner of the trusts for any purpose other than that of taxing trust income to him, and trusts, therefore, retain their identity as a separate tax entity under Section 101(a)(2)(B). [518 F.2d at 63.]

*Estate of O'Connor v. Commissioner, supra,* involved a testamentary marital trust in which the decedent's wife held certain rights which made the trust a grantor trust. Subsequent to the establishment of the trust, the decedent's wife assigned all of her interest in the trust to a section 501(c)(3) charitable foundation. One issue in *Estate of O'Connor* was whether the estate was entitled to a distribution deduction under section 661(a) for amounts passed through the marital trust to the foundation. The resolution of that issue turned upon whether the foundation/grantor should be treated as the "owner." If the foundation were treated as the "owner," then the trust entity would be ignored, and the estate would be deemed to have made its distributions directly to the foundation and not through the trust. This Court held that the trust was not a recognizable tax entity, and disallowed the estate's deduction.[10] In so holding we stated:

When a grantor or other person has certain powers in respect of trust property that are tantamount to dominion and control over such property, the Code "looks through" the trust form and deems such grantor or other person to be the owner of the trust property and attributes the trust income to such person. See secs. 671, et seq. By attributing such income directly to a grantor or other person, the Code, in effect, disregards the trust entity. [69 T.C. at 174.]

Petitioners also rely upon *Rothstein v. United States,* 735 F.2d 704 (2d Cir. 1984), wherein the issues were whether the grantor of irrevocable trusts was (1) entitled to a new cost basis when he purchased shares of corporate stock from the trusts, which he originally contributed to the trusts, and (2) entitled to a deduction for interest paid to the trustee on the promissory note used to purchase the stock. The Commissioner contended that the step-up in basis and the interest deduction should be disallowed because the grantor/owner had in effect pur-

---

[10]While we specifically limited our analysis to an interplay between sec. 678 and other provisions of subch. J, 69 T.C. at 175 n. 17, we believe that a similar analysis is appropriate in the instant case.

chased the stock from himself and had paid interest to himself. The District Court held for the Commissioner, but the Second Circuit reversed. In reversing the District Court, the Second Circuit wrote:

Section 671 makes it plain that it was not Congress's intention that the taxation of grantor/"owners" be governed by what might otherwise seem the sensible general principle that a taxpayer may not have meaningful dealings with himself. Rather, the statute envisions (1) that the income and deductions of the grantor and the trust will be computed in the normal fashion, the trust being treated as a fully independent tax-paying entity, and (2) that the relevant "items of income, deductions, and credits against tax" that would ordinarily appear on the trust's return will instead "be included in computing the taxable income and credits of the grantor." * * * Consistently with the objective of *Clifford* to prevent high-bracket taxpayers from shifting income to low-bracket trusts over which they retain or exercise excessive controls, § 671 dictates that, when the grantor is regarded as "owner," the trust's income shall be attributed to him—this and nothing more. [735 F.2d at 709; fn. ref. omitted.]

We need not comment on the result reached by the Second Circuit in *Rothstein*, nor on the rationale applied by the court in reaching such result.[11] In that case, the court was concerned with a trust while it was still in effect, and the court had to decide whether the tax consequences for the taxpayer-grantor were governed by the specific provisions of sections 671 et seq. or whether to apply the general doctrine that he was to be treated as the owner. The court concluded that those consequences were governed by the specific statutory provisions. Since the transaction at issue in that case was different from that at issue in this case, the court was not concerned with the validity of any regulations. However, the case before us involves a significantly different issue. Here, we must decide what are the tax consequences when a grantor trust is terminated as such. There are no specific statutory provisions relating to such a transaction, and we do have a Treasury regulation dealing specifically with the transaction. Under such circumstances, it is not at all clear that the Second Circuit would apply its rationale to those facts, and we believe that our case is entirely distinguishable.

---

[11]The Commissioner has recently announced that the Service will not follow the decision in *Rothstein v. United States*, 735 F.2d 704 (2d Cir. 1984). Rev. Rul. 85–13, 1985–7 I.R.B. 28.

In the instant case, there is an interplay between section 671 and the partnership provisions of subchapter K, along with the recognition of gain or loss provisions of section 1001. These sections require the recognition of gain upon the sale or disposition of a partnership interest where the amount realized exceeds the adjusted basis of the partnership interest. The basis of a partnership interest includes the partner's share of partnership liabilities. Secs. 722 and 752. As the adjusted basis of the partnership interest is often reduced by partnership losses resulting from depreciation and other writeoffs, the goal is to force a recapture upon disposition. This is accomplished by including, as amounts realized, liabilities previously included in basis. *Crane v. Commissioner*, 331 U.S. 1 (1947).

This scheme of taxation is frustrated here if petitioners are allowed to escape recapture through a formalistic, piecemeal application of the law. The trusts were created with a built-in defect, causing them to be grantor trusts. The trusts then invested in a limited partnership interest that produced significant paper losses for the grantor. At the "cross-over" point, when the partnership began to generate income, the defect in the trusts was cured, and the tax burden was placed on the lower bracket beneficiaries. A formalistic approach, as suggested by petitioners, would result in a finding that ownership never changed hands—since the trusts have technically been the owners of the partnership interests—which would then allow petitioners to escape recapture.

Although *Edgar v. Commissioner*, 56 T.C. 717 (1971), was not cited by either party, we think it necessary to comment upon that opinion in light of the instant case. In *Edgar*, we held that a grantor who was also the income beneficiary of a grantor trust could not be treated as the owner of the corpus portion of the trust. Accordingly, we held that the loss generated by a partnership interest owned by the trust was not deductible on the grantor's individual tax return, because the loss belonged to the corpus portion of the trust, while the grantor was owner only of the income portion. The key issue in *Edgar* was the definition of "portion" in section 677. In *Edgar*, was determined that under section 677 a grantor who was also an income beneficiary could only "own" the income portion of the trust. We did not imply in *Edgar* that it was not possible to own the entire trust, i.e., income and corpus. Our previous

cases presuppose this. See, e.g., *Estate of O'Connor v. Commissioner*, 69 T.C. 165 (1977); *Swanson v. Commissioner*, T.C. Memo. 1974–61, affd. 518 F.2d 59 (8th Cir. 1975). See also sec. 1.671–3(a)(1), Income Tax Regs. In the instant case, the trust became a grantor trust by virtue of section 674(a):

The grantor shall be treated as the owner of any portion of a trust in respect of which the beneficial enjoyment of the corpus or the income therefrom is subject to a power of disposition, exercisable by the grantor or a nonadverse party, or both, without the approval or consent of any adverse party.

Because the trustee, the nonadverse party, has a power of disposition over all of the corpus and income, the grantor must be considered owner of the whole trust, both income and corpus. *Edgar*, therefore, is distinguishable from the instant case.

Petitioners also contend that even if the grantor is the owner of the trust assets, a mere change in the trust's status is not a disposition triggering the recognition of gain. On brief, petitioners argue that a sale or other disposition did not occur, noting that no transfer documents were ever executed, nor was there any other method of conveyance at the time of trust perfection. While this is true in form, a different event took place in substance.

The situation at hand is analogous to cases dealing with part-sale, part-gift transactions. Under section 1.1001–1(e), Income Tax Regs., if a transfer of property is in part a sale and in part a gift, the transferor must recognize gain to the extent his amount realized exceeds his adjusted basis in the property. This doctrine has been applied by the courts to situations where the transferred gift property is subject to a debt. To the extent the debt assumed by the transferee exceeds the transferor's adjusted basis in the property, a disposition is deemed to occur, and a corresponding gain must be recognized by the transferor. *Estate of Levine v. Commissioner*, 634 F.2d 12 (2d Cir. 1980), affg. 72 T.C. 780 (1979); *Johnson v. Commissioner*, 495 F.2d 1079 (6th Cir. 1974), affg. 59 T.C. 791 (1973). See *Diedrich v. Commissioner*, 457 U.S. 191 (1982). Here, the grantor's proportionate share of the partnership's nonrecourse liability exceeded his adjusted basis in the partnership interest. Therefore, a disposition is deemed to have occurred, and gain must be recognized.

Petitioners finally contend that, applying section 704(e) and section 1.704–1(e)(2), Income Tax Regs., to the facts of the instant case, the trustee of the four trusts is the "partner" for purposes of subchapter K. Petitioners argue that since the grantor is not the partner for purposes of subchapter K, section 741, which governs the recognition of gain or loss by the "transferor partner" in the case of a sale or exchange of the transferor's interest in a partnership, is not applicable in the instant case. Respondent contends that an examination of the ownership tests contained in section 1.704–1(e)(2), Income Tax Regs., is unnecessary and inappropriate in a grantor trust situation. Rather, respondent argues that section 671 et seq. (the grantor trust provisions) and the principle of substance over form result in the grantor's being the owner of the partnership interest.

We do not agree with respondent's contention that an examination of the ownership test of the family partnership rules is inappropriate in a grantor trust situation. Section 1.671–1(c), Income Tax Regs., provides, in part, as follows:

Except as provided in such subpart E, income of a trust is not included in computing the taxable income and credits of a grantor or another person solely on the grounds of his dominion and control over the trust. However, the provisions of subpart E do not apply in situations involving an assignment of future income, whether or not the assignment is to a trust. * * * *Nor are the rules as to family partnerships affected by the provisions of subpart E even though a partnership interest is held in trust. * * * [Emphasis added.]

In addition, this Court has noted that the language of section 704(e) is sufficiently broad to cover nonfamily partnership situations even though section 704(e) is primarily directed towards "family partnerships." *Carriage Square, Inc. v. Commissioner*, 69 T.C. 119, 126 n. 4 (1977), citing *Evans v. Commissioner*, 54 T.C. 40, 51 (1970), affd. 447 F.2d 547 (7th Cir. 1971).

We do agree, however, with respondent that the grantor trust provisions result in the grantor's being treated as the owner of the partnership interest. We do not accept petitioners' contention that the application of section 704(e) and the regulations thereunder overrides the grantor trust provisions and necessitates the opposite conclusion.

We do not think that a detailed analysis of the interrelationship of the grantor trust provisions and section 704(e) nor a reconciliation of the various tax principles involved would be helpful in resolving the issues in this case. In general, we think that where there exists a complex arrangement of tiered partnership interests placed in a grantor trust, both subchapter K and subpart E of subchapter J are applicable. In computing income, deductions, and credits of the various taxpayers involved, subchapter K is applied to the partnerships and subpart E operates to tax the grantor on the income, deductions, and credits. Thus in general, the grantor is treated as the owner of the partnership interest for tax purposes. Application of section 704(e) and the regulations thereunder to conclude that the trustee rather than the grantor is the owner of the partnership interest under section 704(e) is ineffective to change this scheme of taxation,[12] because section 704(e) does not operate to override subchapter E.

## II. Retroactive Application of the Regulation

Petitioners argue that if example (5), is upheld, it should not be applied retroactively. Section 1.1001–2, Income Tax Regs., was promulgated on December 11, 1980, while the grantor trust in the instant case was perfected in 1978.

In the Treasury explanation accompanying the regulation, the Government stated that the regulation would have retroactive effect by reasoning that "these amendments merely clarify the existing regulations by setting forth the long-established ruling and litigating position of the Internal Revenue Service." T.D. 7741, 1981–1 C.B. 430, 431. Petitioners dispute this by pointing out that while the rest of section 1.1001–2, Income Tax Regs., may represent the Government's long-standing litigating position, example (5) does not. Petitioners argue that (1) no previous regulation addressed the issue; (2) in several previous cases,[13] the Government argued a position contrary to that taken in example (5); and (3) the only

[12]We noted this result in *Krause v. Commissioner*, 57 T.C. 890, 903 (1972), affd. 497 F.2d 1109 (6th Cir. 1974).

[13]In *W & W Fertilizer Corp. v. United States*, 208 Ct. Cl. 443, 527 F.2d 621 (1975), and *Swanson v Commissioner*, 518 F.2d 59 (8th Cir. 1975), affg. T.C. Memo. 1974–61, the Service argued tha' "owner" under sec. 671 meant owner for purposes of income, deductions, and credits—the exac opposite of the position argued by the Service herein.

pronouncement which treats the subject in the same manner as example (5) was promulgated only 3 years previously[14]— hardly a longstanding precedent.

Generally, regulations are applied retroactively unless the Secretary provides otherwise. Sec. 7805(b); *Helvering v. Reynolds*, 313 U.S. 428 (1941); *Wendland v. Commissioner*, 79 T.C. 355 (1982), affd. per curiam 739 F.2d 580 (11th Cir. 1984), affd. sub nom. *Redhouse v. Commissioner*, 728 F.2d 1249 (9th Cir. 1984). The Secretary's failure to limit the retroactive effect of a regulation may not be disturbed unless it amounts to an abuse of discretion. See *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180 (1957); *Beneficial Life Insurance Co. v. Commissioner*, 79 T.C. 627 (1982).

We find no abuse of the Secretary's discretion in the instant case. This is not a case where the regulation in question alters settled prior law upon which the taxpayer justifiably relied and the alteration causes the taxpayer to suffer inordinate harm. See *Helvering v. R.J. Reynolds Tobacco Co.*, 306 U.S. 110 (1939); *Wilson v. United States*, 588 F.2d 1168, 1172–1173 (6th Cir. 1978). In fact, respondent's position on the issue in the instant case was published in Rev. Rul. 77–402, 1977–2 C.B. 222, in the year prior to the year in issue. Petitioners were thus aware of respondent's position at the time the trusts were perfected. Accordingly, we uphold the retroactive application of example (5).

### III. Capital Gain Versus Ordinary Income

As previously noted, the trusts invested in Saintly via another partnership, Metro. Metro did not have any unrealized receivables or substantially appreciated inventory. Saintly, however, did have unrealized receivables.[15] As a result, respondent determined that the gain on the disposition of the partnership interest by petitioners should be taxed as ordinary income.

Petitioners argue that because the trusts' investments were in Metro, and not in Saintly, directly, the disposition that

---

[14]Rev. Rul. 77–402, 1977–2 C.B. 222, is essentially the same as sec. 1.1001–2(c), example (5), Income Tax Regs.

[15]Petitioners do not contest respondent's determination that Saintly has unrealized receivables or their amount. We will, therefore, treat these issues that have not been raised by petitioners, as conceded by them. Rule 34(b)(4).

occurred was a disposition of a partnership interest in Metro, not Saintly. Accordingly, they conclude that the gain should be taxed as capital gain and not ordinary income. We disagree.

Section 741 provides that in the case of a sale or exchange of an interest in a partnership, gain shall be recognized to the transferor and it shall be considered as gain from the sale or exchange of a capital asset, except as provided in section 751. Section 751(a) generally requires ordinary income treatment for the portion of the gain attributable to unrealized receivables or inventory items of the partnership.[16]

Legislative intent in enacting section 751 was "to prevent the conversion of potential ordinary income into capital gain by virtue of transfers of partnership interests."[17] It is clear that had petitioners invested directly in Saintly instead of using Metro as an intermediary, section 751 would have required ordinary income treatment. For purposes of the application of section 751, we see no reason to distinguish between a direct investment in Saintly and an indirect investment through the use of another partnership. To the contrary, to allow petitioners to escape ordinary income treatment would severely restrict the impact of section 751 in a tiered partnership context. Neither the language of section 741 or 751, nor the applicable legislative history supports such a result. Accordingly, the gain on the disposition must be taxed as ordinary income.[18]

*Decision will be entered for the respondent.*

---

[16]SEC. 751(a). SALE OR EXCHANGE OF INTEREST IN PARTNERSHIP.—The amount of any money, or the fair market value of any property, received by a transferor partner in exchange for all or a part of his interest in the partnership attributable to—

(1) unrealized receivables of the partnership, or

(2) inventory items of the partnership which have appreciated substantially in value,

shall be considered as an amount realized from the sale or exchange of property other than a capital asset.

[17]S. Rept. 1622, 83d Cong., 2d Sess. 98 (1954); H. Rept. 1337, 83d Cong., 2d Sess. 70 (1954).

[18]Under new sec. 751(f), which was added by the Deficit Reduction Act of 1984, Pub. L. 98–369, 98 Stat. 595, the result would be the same as we reach herein. Sec. 751(f), which is effective for distributions, sales, and exchanges made after Mar. 31, 1984, in taxable years ending after that date, is not applicable to the instant case. Also, the fact of its enactment does not in any way affect our disposition of this issue. See S. Prt. 98–169, vol. I, at 240 (1984).